**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1824
_____

DARRYL ORRIN BAKER,
Appellant

v.

TROY WILLIAMSON, LEWISBURG CAMP; ANGILINI, UNIT MANAGER AND
ACTING ADMINISTRATOR; COUNSELOR TUKAR; ACTING WARDEN FORBES;
COUNSELOR TRUE; DOCTOR BUSSANIC, CHIEF ADMINISTRATOR MEDICAL
DEPARTMENT; P.A. GOSA; P.A. GERADI; P.A. BRACHAS; CHAMBERS; MRS.
KERSTETTER; OFFICER ROSS BOYD, Jr.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 07-cv-02220)
District Judge:  Honorable William W. Caldwell

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 18, 2011
Before:  JORDAN, HARDIMAN and ROTH, Circuit Judges

(Opinion filed December 5, 2011)
_____

OPINION
_____

PER CURIAM

In November 2007, the Appellant, Darryl Orrin Baker, commenced this Bivens[1] action against twelve Bureau of Prison ("BOP") employees[2] at the Satellite Prison Camp in Lewisburg, Pennsylvania ("SPC-Lewisburg"), where he was formerly incarcerated.[3] In the complaint, Baker alleged that the defendants had: (a) been deliberately indifferent to his medical needs in violation of the Eighth Amendment by denying him treatment for a pre-existing eye injury; (b) denied him access to the courts by returning his legal mail to the sender; (c) retaliated against him in various ways for exercising his First Amendment right to file grievances and lawsuits; and (d) conspired to deprive him of his constitutional rights and to subject him to racial discrimination in violation of the Equal Protection Clause. By orders entered March 13, 2009, May 5, 2010, and March 15, 2011,

---

[1] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2] Specifically, Baker named as defendants: Troy Williamson, the retired warden; C. Angelini, a unit manager; J. Tokar, a retired counselor; P. Forbes, a counselor; Dr. A. Bussanich, clinical director; S. Gosa and J. Geradi, physician's assistants; B. Chambers, a disciplinary hearing officer; R. Korsetter, a correctional programs specialist; Bill True, a case manager; and B. Ross and Ross Boyd, correctional officers.

[3] Baker was incarcerated at the Federal Correctional Institution at McKean in Bradford, Pennsylvania, when he incurred the 2004 eye injury that is the subject of the Eighth Amendment claim discussed below. Sometime in 2004 or 2005, Baker was transferred to FCI-Elkton. On or about August 26, 2005, he was transferred to SPC-Lewisburg, and, in March 2007, was moved to FCI-Sandstone in Minnesota. He has since been released from federal confinement.

the District Court granted the BOP defendants' motions for summary judgment and dismissed all of Baker's claims.[4]  Baker now appeals from the District Court's orders.[5]

## I.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We exercise plenary review over the District Court's decision to grant summary judgment.  See Wicker v. Consol. Rail Corp., 142 F.3d 690, 696 (3d Cir. 1998).  Summary judgment is appropriate only if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## II.

A.      Eighth Amendment Deliberate Indifference Claim

In the complaint, Baker claimed that defendants Doctor Bussanich, Physician's Assistants Gosa and Geradi, and Counselor True violated his Eighth Amendment rights by refusing to perform surgery on his injured eye and ignoring his repeated complaints of pain.  In order to prevail on this claim, Baker was required to show that these healthcare providers were deliberately indifferent to a serious medical need.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  Deliberate indifference requires a sufficiently culpable state of mind, such as "reckless[] disregard[]" to a substantial risk of serious harm to a prisoner.

---

[4] In its March 13, 2009 order, the District Court granted the BOP defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Baker's Bivens claims to the extent he sued them in their official capacities.  See FDIC v. Meyer, 510 U.S. 471, 483 (1994).  Baker does not challenge this ruling on appeal.

[5] Baker sought reconsideration of each of the District Court's orders, but the District Court denied each request.

See Farmer v. Brennan, 511 U.S. 825, 836 (1994). Allegations of negligent treatment do not trigger constitutional protections. Estelle, 429 U.S. at 105-06.

The District Court correctly concluded that there was an insufficient evidentiary basis on which a reasonable jury could find in Baker's favor on his Eighth Amendment claim. Although Baker maintains that he needed to have eye surgery, the record shows that only one of several doctors suggested surgery, and that was in April 2004, almost two years before the defendant healthcare providers began treating him. The prison doctors and consulting specialists who treated Baker thereafter did not recommend surgery.[6] Mere disagreement with a course of treatment does not support an Eighth Amendment claim. See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Baker also claims that the defendants ignored his complaints of pain, but, as the District Court noted, the record reflects that he was given pain medication regularly. For these reasons, the District Court correctly concluded that Doctor Bussanich, Physician's Assistants Gosa and Geradi, and Counselor True were entitled to summary judgment on Baker's Eighth Amendment claim against them.[7]

---

[6] In support of his Eighth Amendment claim, Baker relies on an expert report that he obtained in connection with a prior medical malpractice lawsuit. As the District Court explained, however, this report does not support his deliberate indifference claims in this case because it establishes, at most, mere negligence.

[7] In his brief, Baker identifies Physician's Assistant Bret Brosious as a defendant and claims that the District Court erroneously dismissed his Eighth Amendment claim against him. It appears that, in the complaint, Baker identified this party as "Brachas," not "Brosious." Because no such person worked at SPC-Lewisburg, the District Court dismissed him from the case. To the extent that Baker now attempts to argue that the

B.     Right of Access to the Courts Claim

Baker also claimed that defendants Kerstetter and Chambers violated his right of access to the courts under the First and Fourteenth Amendments by interfering with his ability to receive his legal mail. Baker explained that, in May 2005, while he was incarcerated at FCI-Elkton, he had filed a lawsuit in the Western District of Pennsylvania against the medical department at FCI-McKean (where he had been previously incarcerated) alleging medical malpractice in connection with his eye injury. According to Baker, the district court in that case (the "Western District Court") attempted to send him a copy of a July 11, 2006 order dismissing the suit, but defendants Kerstetter and Chambers—who, according to Baker, worked in the mail room—marked the envelope "return to sender." Baker claims that when he later learned of the dismissal, he was unable to revive his appeal rights.

We agree with the District Court that the prison defendants were entitled to summary judgment on this claim, as nothing in the record indicates that the order from the Western District case was ever sent to SPC-Lewisburg. To the contrary, the Western District Clerk of Court from that district sent the order to FCI-McKean. Furthermore, there is no evidence in the record that either defendant Kertstetter, who is a correctional programs specialist, or defendant Chambers, who is a disciplinary hearing officer, were

District Court erred in so doing, we note that any such argument has been waived. Gass v. V.I. Tel. Corp., 311 F.3d 237, 246 (3d Cir. 2002) ("[I]t is well established that failure to raise an issue in the district court constitutes a waiver of the argument.") (internal quotation marks and citation omitted).

ever personally involved in handling Baker's mail. Accordingly, the District Court properly entered summary judgment in favor of defendants Kerstetter and Chambers on this claim.

C.  The Retaliation Claims

Next, Baker alleged that the BOP defendants punished him in various ways in retaliation for his having filed grievances and lawsuits against them. Specifically, Baker claimed that the defendants: removed him from his UNICOR job, placed him in administrative custody, transferred him to another facility, and issued two false incident reports against him. Prison officials may be held liable for retaliatory conduct that was motivated "in substantial part by a desire to punish [the prisoner] for exercise of a constitutional right," Allah v. Seiverling, 229 F.3d 220, 224–25 (3d Cir. 2000) (internal quotation marks and citation omitted), such as filing lawsuits and grievances related to the conditions of incarceration. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). To prevail on a retaliation claim, the prisoner must prove: (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). However, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334.

6

The District Court correctly concluded that Baker failed to provide sufficient evidence to support an arguable connection between his protected activity and the various adverse actions taken against him. First, although Baker alleged that the defendants removed him from his UNICOR job on October 23, 2006, in retaliation for the grievances he filed against Kerstetter and Chambers, the record reflects that Baker did not file that grievance until *after* he was removed from his UNICOR job. Furthermore, to the extent that Baker claimed that the defendants were retaliating against him for other grievances that he filed in May and June of 2006, we agree with the District Court that nothing in the record suggests any causal connection between those grievances and Baker's job status. In any event, the defendants offered undisputed evidence that Baker lost his UNICOR job as a disciplinary sanction for refusing to obey an order and being in an unauthorized area on October 20, 2006.

Baker also alleged that he was placed in administrative custody for thirty-five days in February and March 2007 for retaliatory reasons. The District Court correctly concluded that this claim is likewise unsupported by the record, which indicates that he was housed in administrative custody for a period of only twelve days and as a direct result of a gambling incident.

The District Court also correctly concluded that there was no evidentiary support for Baker's claim that he was transferred to a higher custody facility as a result of his litigious behavior. The record shows that Baker was transferred because he received three incident reports—which heightened his custody status so that he could no longer be

housed at a camp facility such as SPC-Lewisburg—not because he had filed grievances and lawsuits against the BOP defendants.

Finally, the District Court correctly concluded that the record does not support Baker's allegations that he was issued two false incident reports for retaliatory reasons. With respect to the first incident report, which accused Baker of gambling, the District Court correctly noted that Baker admitted his guilt to this misconduct. Therefore, the report was issued for a legitimate penological purpose. As for the incident report that Corrections Officer Boyd Ross filed charging him with being in an unauthorized area (the law library) and interfering with the taking of count, we agree with the District Court that Baker failed to provide any evidence indicating that his resort to legal process was a motivating factor in Ross's decision to file the report. Therefore, the District Court correctly concluded that no genuine issue of material fact exists as to one of the essential elements of this retaliation claim.

### D.       The Conspiracy and Equal Protection Claims

Lastly, Baker claimed that the BOP defendants collectively conspired against him for exercising his First Amendment right to grieve about his medical treatment. According to Baker, the defendants "conspired with a conspiratorial agreement to discriminate against [him . . . because he] is African-American." To the extent that Baker was alleging a civil conspiracy claim, he was required to show that "two or more conspirators reached an agreement to deprive him . . . of a constitutional right under color of law." Parkway Garage v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993). As the

8

District Court explained, however, Baker failed to provide any evidence suggesting that the defendants entered into any sort of agreement or plan to deprive him of anything.

Similarly, Baker failed to provide any evidentiary support for his allegation that he was treated differently on account of his race. While Baker alleged that C.O. Ross treated him differently than other inmates by ordering him out of the law library for afternoon count, he failed to provide any evidence of how similarly situated defendants were treated in this context. See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (explaining that, in order to establish a violation of the Equal Protection Clause, a defendant must show that he has been treated differently from similarly-situated individuals). Therefore, the BOP defendants were entitled to summary judgment on this claim.[8]

### III.

We have reviewed Baker's remaining arguments and conclude that they are without merit. Accordingly, we will affirm the District Court's orders entering summary judgment in favor of the defendants.

---

[8] The District Court properly dismissed Baker's claims against retired warden Williamson on the ground that liability in a civil rights action cannot be predicated solely on the operation of respondeat superior. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).