PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 08-2288 and 08-2365
_____

DARRYL ORRIN BAKER,
                    Appellant

v.

UNITED STATES OF AMERICA;
GOVERNMENT OFFICIALS, at F.C.I. MCKEAN;
ELLEN MCNINCHS; MR. MERRILLO;
WARDEN JAMES SHERMAN;
KATHLEEN HAWK SAWYER; MR. RAYOME
_____

Appeals from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1-05-cv-00146)
District Judge: Honorable Sean J. McLaughlin
_____

Argued November 9, 2011

Before:  RENDELL, JORDAN and GREENAWAY, JR.,
                    Circuit Judges

(Opinion Filed: February 13, 2012)

_____

Alexander Bilus, Esq.  **[ARGUED]**
Carolyn H. Feeney, Esq.
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA  19104
   *Counsel for Appellant*

Nicholas J. Bagley, Esq.
Thomas M. Bondy, Esq.
Michael E. Robinson, Esq.  **[ARGUED]**
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC   20530

Robert L. Eberhardt, Esq.
Megan E. Farrell, Esq.
Office of the United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA  15219
   *Counsel for Appellees*

Matthew H. Duncan, Esq.  **[ARGUED]**
Fine, Kaplan & Black
1835 Market Street, Suite 2800
Philadelphia, PA  19103
   *Counsel for Court Appointed Amicus Curiae*
_____

OPINION OF THE COURT
_____

2

RENDELL, Circuit Judge.

In 2005, Darryl Orrin Baker, proceeding pro se, filed a federal lawsuit against the United States and various officials of the McKean Federal Correctional Institution ("FCI-McKean"), alleging personal injuries caused by their exposing him to second-hand smoke while he was incarcerated at that facility in 2004, in violation of the Federal Tort Claims Act, 28 U.S.C. § 2671. The District Court dismissed his case, but, as is discussed at length below, news of the dismissal did not reach Baker for quite some time. His efforts to rectify the situation created by the late notice were, as a result, untimely.

Baker appeals the District Court's orders denying his untimely motions to reopen the time to take an appeal and his untimely motions for reconsideration of the prior order dismissing his complaint. He contends that his motions were untimely because prison officials delayed in transmitting to him the District Court's dismissal order. He urges that because of the delay, we should either rule that the District Court can consider reopening the time to take an appeal, or should deem his motion for reconsideration timely, which would enable us to review the underlying dismissal order.

For the reasons set forth below, we hold that we cannot relax the timing requirements for filing a motion to reopen the time to take an appeal under Federal Rule of Appellate Procedure 4(a)(6), even for prison delay, because those timing requirements are governed by a statute and are jurisdictional in nature. Furthermore, while prison delay may make an untimely motion for reconsideration timely so as to permit us to exercise appellate jurisdiction over an order we

3

would otherwise lack jurisdiction to review, the delays Baker complains of were not caused by prison officials, and therefore, his untimely motions for reconsideration do not permit us to review the underlying dismissal order.

## I. Background and Procedural History

When Baker filed his complaint in the United States District Court for the Western District of Pennsylvania, he was incarcerated at the Federal Correctional Institution in Lisbon, Ohio ("FCI-Lisbon"). While his case was proceeding in the District Court in 2005, Baker was transferred from FCI-Lisbon to the Lewisburg United States Penitentiary ("USP-Lewisburg").

The District Court entered an order on July 11, 2006 granting the defendants' motion to dismiss (the "Dismissal Order"), and sent notice of the dismissal to Baker and the defendants. Unfortunately, the District Court clerk's office sent the Dismissal Order to Baker's address at FCI-Lisbon, the address then listed on the docket sheet, instead of USP-Lewisburg.[1] (Amicus App. at 273.) An internal docket entry dated July 24, 2006 confirms that Baker did not receive a copy of the order. The entry states, "***Staff notes; Order dated 7/11/06 returned from Darryl Orrin Baker; envelope marked 'Not at this address; Return to Sender.'" (*Id*. at 274.) It appears that the clerk's office did not make any effort to

---

[1] Although the docket sheet refers to Baker's place of incarceration as "FCI-Lisbon," the only federal prison in Lisbon, Ohio is actually called "FCI-Elkton." There is no federal prison that is called "FCI-Lisbon." We refer to the prison as such, however, in order to be consistent with the record.

4

locate Baker after the copy of the order was returned. Unfortunately for Baker, this was just the beginning of a series of missteps that gave rise to the procedural puzzle presented in this appeal.

The next docket activity occurred nearly seven months later, in February 2007. The first docket entry dated February 9, 2007 is a change-of-address notice from Baker. Baker had written a letter to the District Court dated December 28, 2005, notifying the clerk's office of his move from FCI-Lisbon to USP-Lewisburg and providing a new mailing address. However, the clerk's office did not docket the letter or enter his address change on the docket until February 9, 2007, more than a year after Baker had sent his notice. The second docket entry on February 9, 2007 reflects that Baker sent a letter to the District Court dated January 31, 2007, in which he explained that he had obtained a copy of the docket sheet in his case and learned from it that the District Court issued the Dismissal Order. Baker asserted that he never received a copy of the Dismissal Order, and as a result, had been unable to file a motion for reconsideration or a notice of appeal. Baker asked the clerk's office to provide him with a copy of the Dismissal Order. The clerk's office did so, but not until eleven months later, on January 7, 2008.

In the meantime, on May 31, 2007, Baker filed[2] several motions: a post-judgment motion under Federal Rule

_____

[2] Baker signed these motions on May 31, 2007, and they were entered on the District Court docket on June 8, 2007. We presume here that Baker filed all of his motions on the date that he executed them. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (deeming a notice of appeal filed "at the time

5

of Civil Procedure 60(b); a motion to file a notice of appeal under Federal Rule of Appellate Procedure 4(a)(1);[3] a motion to toll the time to take an appeal under Appellate Rule 4(a)(4); and a motion to reopen the time to take an appeal under Appellate Rule 4(a)(6). Then, as noted above, on January 7, 2008, nearly a year after Baker requested it, Baker was served with a copy of the Dismissal Order. Baker then supplemented his May 31, 2007 motions on January 16, 2008 by filing a motion to alter or amend the judgment under Rule 59(e). In all of these motions, Baker alleged that the prison was responsible for his not receiving a copy of the Dismissal Order, averring generally that staff at USP-Lewisburg mishandled his mail by returning a copy of the Dismissal Order to the District Court. This error, Baker contended, prevented him from filing timely post-judgment motions and a timely notice of appeal from the Dismissal Order.

On January 31, 2008, the District Court denied all of Baker's motions. First, the District Court construed all of Baker's motions under Appellate Rule 4 as motions to reopen the time to take an appeal, pursuant to Appellate Rule 4(a)(6). The District Court explained that it was barred from reopening Baker's time to file a notice of appeal because Baker's motion was not filed within the earlier of 180 days after the judgment was entered or within seven days of his receiving notice of the entry, as then-required by Appellate

petitioner delivered it to the prison authorities for forwarding to the court clerk").

[3] We will refer to the Federal Rules of Civil Procedure as "Rules," and use the short-hand "Appellate Rule" when referring to the Federal Rules of Appellate Procedure.

6

Rule 4(a)(6)(B).[4] Next, the District Court denied Baker's motion for reconsideration under Rule 59(e) as untimely because Baker failed to file that motion within ten days of the Dismissal Order, as then required under Rule 59(e).[5] The District Court also denied Baker's Rule 60(b) motion, but that is not at issue on appeal.

On February 9, 2008, Baker filed another motion for reconsideration under Rule 59(e). In that motion, Baker asserted that the District Court erred in denying his first motion for reconsideration because it failed to consider in that denial order that prison authorities mishandled the delivery of the Dismissal Order. At the same time, Baker also filed another motion to reopen the time to take an appeal. The District Court denied these motions on April 10, 2008. As to Baker's attempts to reopen the time to take an appeal, the

---

[4] Currently, a motion to reopen the time to take an appeal must be filed within the earlier of 180 days after the judgment was entered or fourteen days of receiving notice of the entry. Fed. R. App. P. 4(a)(6)(B). However, at the time Baker's case was before the District Court, a litigant had to file his motion to reopen within the earlier of 180 days after the judgment was entered or seven days of receiving notice of the entry. Fed. R. App. P. 4(a)(6)(B) (2007). Amendments in 2009 to Appellate Rule 4(a)(6) changed the seven-day time limit to fourteen days.

[5] Currently, a motion for reconsideration under Rule 59(e) must filed no later than twenty-eight days after the entry of the judgment. Fed. R. Civ. P. 59(e). However, at the time Baker's case was before the District Court, a ten-day deadline applied. Fed. R. Civ. P. 59(e) (2007).

District Court reaffirmed its previous ruling that Appellate Rule 4(a)(6) sets a 180-day outer limit on such an attempt. As to Baker's Rule 59(e) motion, the District Court rejected Baker's argument that it needed to hold an evidentiary hearing to determine whether prison officials actually interfered with the delivery of his mail, believing that our opinion in *Poole v. Family Court of New Castle County*, 368 F.3d 263, 265-66 (3d Cir. 2004), barred exclusion of delay caused by prison officials from time limits for filing an appeal in civil cases.[6]

Baker timely appealed the District Court's January 31, 2008 and April 10, 2008 orders. We consolidated Baker's appeals with three other cases — *Barner v. Williamson, et al.*, No. 08-1025, *Long v. Atlantic City Police Department, et al.*, No. 06-4732, and *Cycle Chem, Inc. v. Jackson, et al.*, No. 09-1320 — that also concern the timeliness of appeals under Appellate Rule 4(a).[7]

---

[6] As we discuss below and in a companion case filed today, *Long v. Atlantic City Police Department*, No. 06-4732, some of our reasoning in *Poole*, upon which the District Court relied, was mistaken. However, our ultimate ruling was correct.

[7] We appointed Fine, Kaplan and Black, R.P.C. as amicus on behalf of the Court to brief the jurisdictional issues in the cases. Because Baker, Barner, and Long are all appearing pro se, we also appointed Dechert LLP as pro bono counsel to represent them solely on the jurisdictional issues presented in the appeals. The Court greatly appreciates the assistance provided by amicus and pro bono counsel in these cases. We are issuing separate opinions in each of the cases.

## II. Discussion

Baker's appeals raise two issues, each of which concerns a separate rule of appellate procedure. The first rule, Appellate Rule 4(a)(6), concerns a district court's ability to reopen the time to file an appeal. It states:

> The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:
>
> (A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;
>
> (B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and
>
> (C) the court finds that no party would be prejudiced.

Fed. R. App. P. 4(a)(6). The second rule at issue is Appellate Rule 4(a)(4). That rule states, in pertinent part:

> (A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the

9

order disposing of the last such remaining motion:

. . .

(iv) to alter or amend the judgment under Rule 59;

 . . . .

Fed. R. App. P. 4(a)(4). Thus, the timely filing of a Rule 59 motion tolls the time to appeal the underlying order until the district court rules on the Rule 59 motion.

The first issue before us is whether the District Court erred in denying Baker's various attempts to reopen the time to take an appeal under Appellate Rule 4(a)(6). Baker argues that his motions to reopen should have been granted because, in calculating the time during which one may move to reopen, courts should exclude any delay attributable to prison authorities. Under Baker's view of the rule, the District Court should have started counting his time to reopen from January 7, 2008, the date he received a copy of the Dismissal Order. If the District Court thus erred in denying Baker's motions to reopen, we would reverse and remand with instructions to the District Court to evaluate whether Baker's allegation of prison delay may be credited such that his motion to reopen could be granted, which might ultimately provide Baker the opportunity to file a timely notice of appeal that would bring up the Dismissal Order for appellate review. However, if the District Court was correct in denying Baker's motions, then the appeal from the Dismissal Order would be barred unless his motion for reconsideration was timely.

Thus, the second question presented is whether we may deem his motions for reconsideration timely due to his allegations of delay caused by prison officials in delivering the Dismissal Order to him; doing so would toll Baker's time to take an appeal under Appellate Rule 4(a)(4)(A). If the answer to that question is yes, then we would have jurisdiction over the appeal from the Dismissal Order, as well as from the January 31, 2008 and April 10, 2008 orders denying the various post-judgment motions. If the answer to that question is no, then we would have jurisdiction only over the appeals from the January 31, 2008 and April 10, 2008 orders denying his motions for reconsideration.

A.    Reopening the Time to File an Appeal Under Appellate Rule 4(a)(6)

As noted above, after learning in February 2007 that the District Court had entered the Dismissal Order, Baker filed various motions, all of which the District Court construed as motions to reopen the time to take an appeal under Appellate Rule 4(a)(6), and which the District Court denied because they were filed after the 180-day outer limit imposed by Appellate Rule 4(a)(6). Baker asserts that his motions to reopen should be considered timely, however, because he could not have complied with the 180-day requirement as he did not receive the Dismissal Order, and, because he moved to reopen within the 180-day window of Appellate Rule 4(a)(6), provided that time lost due to delay caused by prison officials is excluded and his time to file his motion to reopen runs from the date he received the order. We first consider whether we can recognize equitable exceptions to Appellate Rule 4(a)(6) in light of Baker's lack of notice, and, if not, then we consider whether we may exclude time lost to prison delay under *Houston v. Lack* in

11

determining whether Baker complied with that Rule's requirements.

>1. *Requirements to Reopen the Time to Take an Appeal*

Appellate Rule 4(a)(1) provides that a notice of appeal must be filed within thirty days after the entry of the judgment or order appealed from, or within sixty days, when one of the parties to the case is the United States. Fed R. App. P. 4(a)(1). If a party fails to file his notice of appeal within the thirty- or sixty-day time limit, Appellate Rule 4(a)(6) provides a limited opportunity to reopen the time to file an appeal when certain conditions are met. First, the district court must find that the party moving to reopen the time to file an appeal did not receive notice of the entry of the judgment or order sought to be appealed within twenty-one days after its entry on the district court docket. Second, the motion to reopen must be "filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77(d) of the entry, whichever is earlier." Third, the district court must find that no party would be prejudiced. If all of these conditions are met, the district court may reopen the time to file an appeal for a period of fourteen days after the date when its order to reopen is entered. Fed. R. App. P. 4(a)(6)(A)-(C). Appellate Rule 4(a)(6) adopts these conditions directly from a statute, 28 U.S.C. § 2107.[8] While

---

[8] Section 2107(c) provides, in pertinent part:

>In addition, if the district court finds—
>>(1) that a party entitled to notice of the entry of a judgment or order did not

12

according to its plain terms, the rule imposes specific time limits within which one may move to reopen the time to file an appeal, the question is whether those limits are subject to any exceptions, equitable or otherwise, that would allow us to relax the rule's time limits.

The Supreme Court answered this question in *Bowles v. Russell*, 551 U.S. 205 (2007). Bowles missed Appellate Rule 4(a)(1)'s thirty-day deadline to file a notice of appeal after being denied federal habeas relief by the district court. *Id.* at 207. When Bowles moved to reopen the time to take an appeal under Appellate Rule 4(a)(6), the district court granted it and gave Bowles seventeen days, rather than the fourteen days specified by Appellate Rule 4(a)(6) and § 2107(c), to file his notice of appeal. Bowles filed his appeal within the seventeen days allowed by the district court's order, but after the fourteen-day period allowed by Appellate Rule 4(a)(6)

> receive such notice from the clerk or any party within 21 days of its entry, and
> (2) that no party would be prejudiced,
> the district court may, upon motion filed within 180 days after entry of the judgment or order or within 14 days after receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal.

Like Appellate Rule 4(a)(6), § 2107(c) was amended in 2009 to change the seven-day requirement to fourteen days. *See supra* n.4 (noting that at the time Baker filed his motions to reopen, the rule required a litigant to so move within the earlier of 180 days after the entry of judgment, or seven days after the litigant received notice of the judgment).

13

and § 2107(c) had passed. *Id*. Bowles argued that he should be permitted to appeal because he had filed his notice of appeal in accordance with the district court's order permitting him to do so. *See id.* at 214.

The Supreme Court held that the court of appeals lacked jurisdiction over Bowles's appeal because it was filed outside the fourteen-day window allowed by Appellate Rule 4(a)(6) and § 2107(c). The Court observed that "the limit on how long a district court may reopen th[e] period [for filing an appeal under Appellate Rule 4(a)(6)] is set forth in a statute," and concluded that Appellate Rule 4(a)(6) was a jurisdictional rule, not a "simple 'claim-processing rule.'" *Id.* at 213 (citing 28 U.S.C. § 2107(c)). In so holding, the Supreme Court reaffirmed the basic principle that "the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" *Id.* at 209 (quoting *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 61 (1982)). If a party fails to comply with the prescribed time limits, a court of appeals lacks jurisdiction over his case.

Continuing its efforts to clarify the difference between jurisdictional rules—those which are strictly enforced because they control a court's subject-matter jurisdiction over a case—and claims-processing rules—those which are subject to waiver, forfeiture, and equitable exceptions because they do not set mandatory rules regarding a court's subject-matter jurisdiction—the Court distinguished Bowles's case from other cases involving claims-processing rules. For example, in *Kontrick v. Ryan*, 540 U.S. 443, 448 (2004), the Supreme Court held that a party's failure to comply with the timing requirement of Federal Rule of Bankruptcy Procedure 4004 did not deprive a court of subject-matter jurisdiction because, in part, that rule did not derive its timing requirement from a

14

statute.    Rather, Rule 4004 was a procedural claims-processing rule, which, while important for the orderly transaction of business and administration of cases before a court, may be subject to waiver or forfeiture if a party waits too long to raise the timeliness issue before the court issues a decision on the merits.  *Id*. at 456; *see also Eberhart v. United States*, 546 U.S. 12 (2005) (holding that Federal Rule of Criminal Procedure 33(a), which parallels Bankruptcy Rule 4004, is a claims-processing rule subject to waiver or forfeiture).

The Supreme Court in *Bowles* was explicit in stating that neither *Kontrick* nor *Eberhart* "calls into question our longstanding treatment of statutory time limits for taking an appeal as jurisdictional" such that any failure to comply with them would divest a court of subject-matter jurisdiction.  551 U.S. at 210.[9]  As it explained, § 2107 "contains the type of

---

[9] The Supreme Court's suggestion that some time limits have jurisdictional force because they are derived from statute has led lower courts to emphasize that point in assessing whether other rules impose jurisdictional limits or merely give claims-processing guidance.  *See, e.g.*, *United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1099 (9th Cir. 2008) ("Whether a federal rule establishing a time limitation imposes a jurisdictional rule depends on whether the rule derives from a statute." (citing *Kontrick*, 540 U.S. at 452)).  Yet, such a narrow focus is inappropriate, as some rules based in statute are not jurisdictional.  *See Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1241 (2010) (concluding that statutory rule requiring copyright holders to register works before suing was not jurisdictional); *Dolan v. United States*, 130 S. Ct. 2533, 2536 (2010) (holding that the

15

statutory time constraints that would limit a court's jurisdiction." *Id.* at 211. Furthermore, it found this reasoning to make "good sense" because Congress possesses the authority to decide what cases lower federal courts have the power—or jurisdiction—to consider. *Id.* at 212. And "[b]ecause Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." *Id.* at 212-13.

Based on this reasoning, the Supreme Court concluded that § 2107(c), and, thus, Appellate Rule 4(a)(6), set forth specific limitations imposed by Congress on a district court's authority to reopen the time to file an appeal. Failure to comply with those limitations operates to deprive a court of appeals of jurisdiction over an appellant's appeal. *Id.* at 213. The district court's order permitting Bowles seventeen days to file his notice of appeal did not effectively alter the time limits because the district court had no authority to create equitable exceptions to them. *Id.* at 214; *see also In re Sealed Case (Bowles)*, 624 F.3d 482, 487 (D.C. Cir. 2010) (declining to override the requirements of Appellate Rule 4(a)(6) because that rule is mandatory and jurisdictional). Accordingly, there is no doubt after *Bowles* that those rules

district court was able to enter a restitution order even though it missed the statutory deadline to do so). Indeed, the *Bowles* Court did not "hold that all statutory conditions imposing a time limit should be considered jurisdictional," but instead looked to context and history to determine "whether a statute ranks a requirement as jurisdictional." *Reed Elsevier*, 130 S. Ct. at 1247-48. That said, the *Bowles* Court expressly stated that statutory time limits for taking an appeal are jurisdictional.

16

listed in 28 U.S.C. § 2107, which are also embodied in Appellate Rules 4(a)(1) and 4(a)(6), are jurisdictional, and are not subject to equitable modification.

Here, the District Court correctly concluded that Baker's failure to comply with the requirement that his motion to reopen be filed within the earlier of 180 days after the judgment or order is entered, or within seven days after his receipt of notice of the Dismissal Order, was fatal. Baker filed his motion to reopen on May 31, 2007, which was 323 days after the entry of the Dismissal Order and well beyond the 180-day outer limit imposed by Appellate Rule 4(a)(6).[10] *See* 2005 Advisory Committee Notes to Appellate Rule 4(a)(6) ("[A]n appeal cannot be brought more than 180 days after entry, no matter what the circumstances."); 1991 Advisory Committee Notes to Appellate Rule 4(a)(6) (explaining that the rule "establishes an outer time limit of 180 days for a party who fails to receive timely notice of entry of judgment to seek additional time to take appeal"). Given *Bowles*, we cannot extend the 180-day outer limit of Appellate Rule 4(a)(6).

> 2. *Excluding Time Lost Due to Prison Delay Under Appellate Rule 4(a)(6)*

---

[10] If a litigant has not heard from a district court, he would do well to check on the status of his case a few months after the filing of a dispositive motion to ensure that the district court has not rendered a decision of which the litigant is unaware, given the 180-day outer limit for filing a motion to reopen the time to file an appeal. Unfortunately, Baker did not ask for a copy of the Dismissal Order until 206 days after it was entered, by which time it was already too late to seek to reopen the time to file an appeal.

17

Nevertheless, Baker urges that if we cannot extend the time, we should instead *exclude* time allegedly attributable to delays caused by prison officials in transmitting the Dismissal Order. Under his approach, we would begin counting the 7-day/180-day requirement from January 7, 2008, the date Baker finally received a copy of the Dismissal Order. In order to exclude the time allegedly lost to delay caused by prison officials, we would have to read the terms "entry" in § 2107(c) and "entered" in Appellate Rule 4(a)(6)(B) to mean when the prisoner receives the entered order, as opposed to when the order or judgment is actually entered by the clerk on the docket. Baker asserts that reading the statute and the rule in this way is not only permissible, but is required by the Supreme Court's decision in *Houston v. Lack*, as well as our decisions in *United States v. Grana*, 864 F.2d 312 (3d Cir. 1989) and *United States v. Fiorelli*, 337 F.3d 282 (3d Cir. 2003), all cases in which the courts have fashioned ways to take into account the potential delays caused by prison officials that pro se prisoners may confront, while also enforcing the time limits of Appellate Rule 4(a). If we were to read the Appellate Rule and the statute in this way, and agree that the delay was caused by prison officials, Baker's motion to reopen would have complied with the conditions of Appellate Rule 4(a)(6).

*Houston* teaches that we can, in some instances, read a statute to take into account delays that pro se prisoners face. But any such reading must not run contrary to the other terms of the statute. The statute involved in that case, 28 U.S.C. § 2107(a), provides:

> [N]o appeal shall bring any judgment, order, or decree in an action, suit or proceeding of a civil nature before a court of appeals for review

18

> unless notice of appeal is *filed*, within thirty
> days after the entry of such judgment, order or
> decree.

(emphasis added).  Appellate Rule 4(a)(1)(A), which requires a party to file a notice of appeal within thirty days of the entry of the judgment or order appealed from, derives from § 2107(a).  The Supreme Court held that a pro se prisoner's notice of appeal should be *deemed filed*, under § 2107(a) and the Appellate Rule, when he delivers it to prison authorities for forwarding to the district court.  487 U.S. at 270.  This prison mailbox rule, the Court reasoned, was necessary in order to accommodate the unique circumstances pro se prisoners face in having to entrust the forwarding of their filings to prison authorities and in being unable to guard against any delays caused by prison officials in transmitting their filings to the relevant court.  *Id*. at 271.  The rule of *Houston* thus excludes from the time to file a notice of appeal any time lost to delays caused by prison authorities in transmitting the pro se prisoner's notice of appeal to the district court.

In so holding, the Court expressly considered whether the language of § 2107 permitted it to deem a notice of appeal filed when the pro se prisoner hands it over to prison authorities.  The Court noted that the statute:

> does not define when a notice of appeal has
> been "filed" or designate the person with whom
> it must be filed, and nothing in the statute
> suggests that, in the unique circumstances of a
> *pro se* prisoner, it would be inappropriate to
> conclude that a notice of appeal is "filed" within
> the meaning of  § 2107 at the moment it is

19

> delivered to prison officials for forwarding to the clerk of the district court.

487 U.S. at 272. Thus, the Supreme Court fashioned a way to take into account "the unique circumstances of a *pro se* prisoner," while also preserving the mandatory and jurisdictional nature of the timing requirements to file a notice of appeal. *Id.*

However, unlike *Houston*'s reading of § 2107(a) to allow "filed" to be interpreted expansively, we conclude that we cannot read "entry" within the meaning of § 2107(c) in a way that both takes into account potential delays caused by prison officials while also preserving the mandatory and jurisdictional nature of the statute as *Bowles* requires. First, the Appellate Rules provide that an order is "entered" when it is actually added to the civil docket. *See* Fed. R. App. P. 4(a)(7). If we were to read "entry" expansively to mean the date Baker received the Dismissal Order, we would be redefining the meaning of entry, contrary to the definition provided in Appellate Rule 4(a)(7). In contrast, in *Houston*, the Court noted that the Appellate Rules did not foreclose its reading of "filed," for they were silent on the question of when a notice of appeal is actually filed. 487 U.S. at 273.

More significantly, § 2107(c) provides that if the district court finds that a party did not receive notice of the entry of a judgment within twenty-one days of its entry, and that no party would be prejudiced, it:

> may, upon motion filed within 180 days after *the entry of the judgment or order <u>or</u>* within 14 days *after receipt of such notice, whichever is earlier*, reopen the time for appeal for a period

20

> of 14 days from the date of entry of the order
> reopening the time for appeal.

(emphasis added).[11]  Under its plain language, a party may move to reopen the time to file an appeal within the earlier of: (1) 180 days after the entry of judgment, or (2) 14 days after receiving notice of the entry of the judgment.  If we were to read "entry" expansively to mean the date Baker received the Dismissal Order, we would then be modifying § 2107(c) so as to instead provide that "the district court may, upon motion filed within 180 days after the receipt of the judgment or order (substituted for "entry") or within 14 days after receipt of such notice, whichever is earlier . . . ."[12]  This reading is unworkable because it sets forth two different time limits from the notice of the order and would eviscerate the 180-day outer time limit.  No pro se prisoner would ever run up against that limit because the earlier of the two situations listed above would always be fourteen days after receipt of notice of the order, and no pro se prisoner would ever reach

---

[11] Similarly, Appellate Rule 4(a)(6)(B) provides that in order to reopen the time to take an appeal, "the motion [must be] filed *within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice* under Federal Rule of Civil Procedure 77(d) of the entry, *whichever is earlier*."  (emphasis added).

[12] Likewise, if we read "entered" in Appellate Rule 4(a)(6)(B) to mean when Baker received the Dismissal Order, the rule would then read "the motion [must be] filed within 180 days after notice of the judgment or order is received or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77(d) of the entry, whichever is earlier."

180 days before the 14-day period expired. Thus, as to pro se prisoners, this reading would completely eliminate an entire clause of § 2107(c), namely, "within 180 days after the entry of the judgment or order," and would place no outer limit whatsoever on the filing of motions to reopen. In light of *Bowles*'s reminder that Congress has the authority to determine under what circumstances a federal court may hear a case, *see* 551 U.S. at 212-13, we cannot endorse a reading of § 2107(c) that completely nullifies the 180-day outer limit on the time for a litigant—whether a pro se prisoner or not— to take an appeal; doing so would run contrary to Congress's plain intent, apparent in § 2107(c), to set a 180-day outer limit on when a litigant may move to reopen the time to file a notice of appeal. *See also* 2005 Advisory Committee Notes to Appellate Rule 4(a)(6) ("[A]n appeal cannot be brought more than 180 days after entry, no matter what the circumstances.").

Thus, unlike in *Houston*, where nothing in § 2107(a) or the Appellate Rules foreclosed the reading of "filed" that the Supreme Court adopted, here, the plain language and clear intent of § 2107(c) forecloses the reading Baker suggests. Indeed, § 2107(c) concerns itself with the potential for delay in receiving notice of the entry; the point of the 180-day outer limit is *because* there could be delayed notice. This limit is there for a reason and is not superfluous. We cannot endorse an interpretation that effectively deletes it from the statute.

Nothing in our previous decisions in *Grana* or *Fiorelli* requires us to read § 2107(c) as Baker suggests. In *Grana*, we held that delay by prison authorities in delivering mail to a prisoner should be excluded when calculating the time for filing a notice of appeal under Appellate Rule 4(b) in a criminal case. 864 F.2d at 313. Relying on the Supreme

22

Court's holding in *Houston*, we "perceive[d] no difference between delay in transmitting the prisoner's papers to the court and transmitting the court's final judgment to him so that he may prepare his appeal." *Id*. at 316. This conclusion is supportable in *Grana* in part because Appellate Rule 4(b) is not based on a statute.[13] There was no controlling statute in *Grana*, but § 2107(c) is controlling here.

*Fiorelli* speaks to when tolling a litigant's time to file a notice of appeal under Appellate Rule 4(a)(4)(A) is appropriate, not whether requirements in moving to reopen the time to take an appeal under Appellate Rule 4(a)(6) are met. As we discuss further below, Appellate Rule 4(a)(4)(A) provides that a litigant's time to take an appeal is tolled by the filing of certain timely post-judgment motions, including motions for reconsideration. In *Fiorelli*, we held that "a prison's actual delay or interference in the delivery of a final order of the district court is excluded from the calculation of the timeliness of motions for reconsideration . . . filed by pro se inmates." 337 F.3d at 289-90. The effect of this holding is that when a motion for reconsideration is, after excluding time lost due to prison delay, timely, a pro se prisoner's time to file a notice of appeal is tolled under Appellate Rule

---

[13] When *Grana* was decided, it was generally understood that "the failure to file a timely notice of appeal in a criminal case deprives [the court] of appellate jurisdiction." *Virgin Islands v. Martinez*, 620 F.3d 321, 326 (3d Cir. 2010); *see id*. at 326-27 (collecting authority and citing *Grana* in support of the "prior jurisdictional view of [Appellate] Rule 4(b)"). Now, however, Appellate Rule 4(b)'s deadline for filing a notice of appeal in a criminal case is considered a "rigid" claims-processing rule. *Id*. at 329.

4(a)(4)(A). Reading "timely" in Appellate Rule 4(a)(4)(A) to exclude time that is actually attributable to delays caused by prison officials for purposes of tolling is permissible, because nothing in a statute or the Appellate Rules forecloses it. Indeed, unlike Appellate Rule 4(a)(6), which is based in a statute, Appellate Rule 4(a)(4)(A) is not.[14] Notably, in the companion case of *Long v. Atlantic City Police Department*, filed today, we have held that *Fiorelli* is still controlling precedent. *See* --- F.3d ---, No. 06-4732, slip op. at 15 (3d Cir. Feb. 10, 2012).

---

[14] Whether Appellate Rule 4(a)(4)(A) is a claims-processing rule is a question we need not answer here. Even though our holding in *Lizardo v. United States*, 619 F.3d 273, 277 (3d Cir. 2010), implies that Appellate Rule 4(a)(4)(A) is a claims-processing rule because its provisions do not appear in a statute and it was promulgated under the Rules Enabling Act, that does not mean that it is not binding or lacks force. *But see Gonzalez v. Thaler*, 565 U.S. ---, slip op. at 12 (2012) (noting that Appellate Rule 4 is treated "'as a single jurisdictional threshold'" (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315 (1988))). To the contrary, we stated in *Long* that "a conclusion that Appellate Rule 4(a)(4)(A) is a claims-processing rule would not prevent us from dismissing, *sua sponte*, untimely appeals filed under Appellate Rule 4(a)(4)(A)." *Long*, slip op. at 19 n.18. Indeed, although a rule may be claims-processing in nature, a court can still strictly enforce timing requirements contained in that rule. *See, e.g.*, *Gonzalez*, slip op. at 10 ("[C]alling a rule nonjurisdictional does not mean that it is not mandatory . . . ."); *United States v. Mitchell*, 518 F.3d 750 (10th Cir. 2008) (holding that the court had the power to enforce claims-processing rules by way of a *sua sponte* dismissal).

24

Therefore, while there are certain instances in which we can exclude time lost due to prison delay in calculating the timeliness of appeals, the situation presented by Baker's case is not one of them. If we were to read "entry" expansively so as to permit the exclusion of time lost due to prison delay, we would completely eviscerate the plain language of § 2107(c) and Appellate Rule 4(a)(6)(B), both of which set a clear 180-day outer limit on a motion to reopen. Therefore, the District Court was correct in denying Baker's motions to reopen the time to take an appeal.

B.    Tolling the Time to File an Appeal Under Appellate Rule 4(a)(4)

As an alternative to reopening, Baker urges that the Dismissal Order is actually before us because his Rule 59(e) motion should be deemed timely, such that it would toll his time to take an appeal under Appellate Rule 4(a)(4)(A). As we noted above, Appellate Rule 4(a)(4)(A) provides, in pertinent part, that certain "timely file[d]" post-judgment motions, including motions to reconsider under Rule 59(e), serve to postpone "the time to file an appeal . . . until the entry of the order disposing of the last . . . remaining motion." Fed. R. App. P. 4(a)(4)(A).[15]

---

[15] Our amicus has argued that giving Appellate Rule 4(a)(4)(A) that effect in this case would run afoul of Appellate Rule 4(a)(6), because Baker filed his Rule 59(e) motion after the 180-day period for file a motion to reopen had lapsed. Based on the facts presented here, however, we need not, and do not, consider or decide how Appellate Rules 4(a)(4) and 4(a)(6) may interact.

Although Baker acknowledges that his Rule 59(e) motion was untimely, he asks us to treat it as timely by excluding the time lost allegedly due to prison delay, as was permitted by *Fiorelli* and reinforced today in *Long v. Atlantic City Police Department*. Relying on our decisions in *Grana* and *Fiorelli*, we concluded in *Long* that a Rule 59(e) motion may be deemed timely when a pro se prisoner alleges, and the record shows, that prison officials actually delayed or interfered with the delivery of a final order of the district court. *See Long*, slip op. at 15. As we further explained in *Long*,

> when a pro se prisoner makes allegations in connection with a motion for reconsideration that could reasonably be construed as a non-frivolous assertion that the prison delayed delivering the court order that he is asking to be reconsidered, the district court should engage in fact-finding necessary to a jurisdictional analysis under Appellate Rule 4(a)(4)(A).

*Id*. at 15-16. This fact-finding by a district court is critical, for it determines the scope of our jurisdiction.[16]

---

[16] Though critical, the kind of fact-finding that a district court must undertake need not be extensive. As we explained in *Long*, "when the prisoner's allegations are uncontested, the district court may of course choose to credit what the prisoner says . . . We then, in turn, would accept any fact-finding as long as it was not clearly erroneous." *Long*, slip op. at 16-17. Even if the district court cannot conclude on the basis of the facts before it "whether the prison actually delayed or interfered with a prisoner's receipt of an order," a hearing may not be necessary. *Id*. at 17.

In Baker's case, the District Court did not explicitly find any facts that indicate whether Baker's allegation that prison officials mishandled the delivery of his mail was true. In accord with our holding in *Fiorelli* and as affirmed in our holding in *Long*, therefore, we would ordinarily remand to the District Court to find those facts. *See id*. at 18. However, as our opinion in *Poole* suggested and in *Long* makes clear, where the delay is caused not by prison officials but by the clerk's office, we cannot exclude that time when calculating the timeliness of a pro se prisoner's filing.

In *Poole*, a civil case, we noted that the delay that Poole complained of was "not primarily due to Poole's status as an inmate but to the simple fact that he was moved." 368 F.3d at 266 n.4. Poole was transferred from one prison facility to another shortly before the order that he sought to appeal was issued. The clerk's office sent a copy of that order to his first prison, but when it arrived, Poole had already been transferred to the second prison. *Id*. at 264. By the time Poole received a copy of the order, his time to appeal had run. We reasoned in *Long* that the cause of the complained-of delay matters and may determine whether we exclude the time lost as a result of that delay when calculating a litigant's compliance with timing requirements. *Long*, slip op. at 14.[17]

---

[17] In *Poole*, we based our reasoning that prison delay was cognizable in criminal but not civil cases in part on the fact that there was no criminal analogue to Rule 77(d), which provides that "'lack of notice of the entry by the clerk does not affect the time to appeal.'" *Poole*, 368 F.3d at 266 (quoting Fed. R. Civ. P. 77(d)). That is incorrect. *See* Fed. R. Crim. P. 49(c). However, the remainder of *Poole*'s reasoning

Thus, where, as in *Poole*, the delay is caused by the clerk's office, the rule of *Fiorelli* and *Grana* does not apply. *Cf. Fiorelli*, 337 F.3d at 289 ("*Grana* makes clear that only delays *caused by the prison* warrant tolling of the filing deadlines, and '[t]o the extent that the delay represents slow mail, there is nothing that this Court can do to preserve an appellant's right to appellate review.'" (emphasis added) (quoting *Grana*, 864 F.2d at 316)).

Accordingly, we will not remand to the District Court here because we can conclude from facts already contained in the record that the delay of which Baker complains was not due to prison officials, but rather, due to error in the clerk's office. Baker contends that the prison officials at USP-Lewisburg erroneously returned the Dismissal Order to the District Court, rather than giving it to him. He supported this assertion by pointing to the staff notes on the docket sheet indicating "Order dated 7/11/06 returned from Darryl Orrin Baker; envelope marked 'Not at this address; Return to Sender." But Baker is incorrect in asserting that the clerk's office sent the Dismissal Order to USP-Lewisburg. Rather, it is evident that the clerk's office erred by sending the order to FCI-Lisbon when he was no longer there, and by failing to docket Baker's change-of-address letter and forwarding the Dismissal Order to USP-Lewisburg where he was then housed.

Baker's belief that prison officials at USP-Lewisburg erroneously returned the order to the District Court was

is sound, because as we noted in *Long*, "we view the holding in *Poole* as turning not on its distinction between criminal and civil cases but rather on the nature of the alleged delay." *Long*, slip op. at 14.

28

reasonable. After all, Baker had sent his change-of-address letter seven months before the District Court issued the Dismissal Order. Baker lodged a complaint with the prison mailroom staff at USP-Lewisburg in February 2007, claiming that they returned his mail to the District Court. A prison mailroom staff member responded to his complaint in writing. He explained that the mail Baker alleged was returned could not have been returned by USP-Lewisburg staff because mailroom staff do not use a stamp stating "Not at this address; Return to Sender."

However, from this response, coupled with the docket sheet, we know that the Dismissal Order was sent to FCI-Lisbon, not to USP-Lewisburg. At the time the Dismissal Order was issued, the docket incorrectly listed Baker's current address to be at FCI-Lisbon. Taken together, it is clear that the clerk's office erred by mailing the Dismissal Order to FCI-Lisbon instead of USP-Lewisburg. Indeed, Baker conceded as much in another federal case that he brought against prison officials.[18] It also erred by failing to docket Baker's change-of-address letter and forwarding the Dismissal Order to him there.

---

[18] In that case, Baker sought relief based on USP-Lewisburg's alleged interference with Baker's appeal rights in this case, and conceded that the clerk mailed the Dismissal Order to FCI-Lisbon. *See Baker v. Williamson*, No. 07-2220, 2010 WL 1816656, at \*2 (M.D. Pa. May 5, 2010). The District Court rejected Baker's claim that USP-Lewisburg interfered with delivery of the Dismissal Order, and we affirmed. *See Baker v. Williamson*, No. 11-1824, 2011 WL 6016931 (3d Cir. Dec. 5, 2011).

Because Baker's motion for reconsideration was untimely, and that untimeliness cannot be attributed to delays caused by prison officials, we cannot deem his motion for reconsideration to have been timely filed for purposes of tolling under Appellate Rule 4(a)(4)(A). We recognize that this conclusion works an unfortunate result for Baker. The result is distressing, given that the clerk's office seriously erred in failing to update Baker's address of record until more than a year had passed from when he notified the District Court of his move. But as the record before us shows, the delay in receiving notice of the Dismissal Order is not due to prison delay, but rather, due to clerk error, which does not trigger the rule of *Fiorelli* and *Long*.[19]

Although we do not have jurisdiction over the Dismissal Order, we do have jurisdiction over the District Court's orders denying Baker's motions for reconsideration because Baker filed a timely notice of appeal as to those orders. The District Court properly denied Baker's motions for reconsideration because as the District Court concluded and we agree, they were untimely; the District Court was

---

[19] In the mine run of cases, either Appellate Rule 4(a)(6) will be available to allow reopening the time to file an appeal or Appellate Rule 4(a)(5) will be available to allow an extension of time to file an appeal when a litigant—whether a pro se prisoner or not—has not received notice of the appealable order in a timely fashion. Indeed, these Rules should be available regardless of whether the delay is attributable to clerk's office error or prison official error, because in the normal case, notice will be received, even if somewhat delayed, less than 180 days after the entry of the order sought to be appealed.

clearly entitled to enforce the timing requirements of Rule 59. *See supra* note 14. Also, the District Court did not err in concluding that it need not hold an evidentiary hearing to determine whether prison delay caused Baker to receive the Dismissal Order late. Although the District Court based its decision on the reasoning of *Poole* that we have found to be incorrect, *see supra* note 17, the ultimate ruling was correct because the available evidence conclusively shows that the delay was not caused by prison officials. Accordingly, fact-finding under *Fiorelli* is unnecessary.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.