PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4732
_____

RONALD LONG,
                              Appellant

v.

ATLANTIC CITY POLICE DEPARTMENT;
JAMES SCOPPA; ERNEST JUBILEE;
NEW JERSEY STATE POLICE;
NANCY J. TAYLOR; LAURA A. BARBATO,


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-cv-00785)
District Judge:  Hon. Noel L. Hillman
_____

Argued
November 9, 2011

Before:  RENDELL, JORDAN, and GREENAWAY, JR.,
*Circuit Judges.*

(File: February 13, 2012)
_____

Alexander Bilus   [ARGUED]
Carolyn H. Feeney
Dechert
2929 Arch Street – 18th Fl.
Philadelphia, PA   19104
    *Counsel for Appellant*

Matthew H. Duncan   [ARGUED]
Fine, Kaplan & Black
1835 Market Street - #2800
Philadelphia, PA   19103
    *Amicus Curiae Counsel*

_____

## OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Ronald Long, a New Jersey state prisoner who proceeded pro se before the United States District Court for the District of New Jersey, appeals an order of that Court denying his untimely motion for reconsideration of a prior order dismissing his complaint.  Long relies on Federal Rule of Appellate Procedure 4(a)(4)(A), which provides that, if a timely motion for reconsideration under Federal Rule of Civil Procedure 59(e) is filed, the time to appeal begins to run from the district court's disposition of the motion.  He reasons that, here, we can review the underlying dismissal order because his motion for reconsideration should be deemed timely since

mail delay within the prison caused him to file the motion late.

For the reasons set forth below, we agree with Long that, in cases where the record supports a finding of delay in prison mail delivery, such delay may make an untimely Rule 59(e) motion timely so as to permit the exercise of appellate jurisdiction over an order we would otherwise lack jurisdiction to review. When the record is insufficient to support a prisoner's allegations of prison delay, we may remand to the District Court for appropriate fact-finding. Ultimately, however, we rule that the issue of delay need not be resolved on remand because we have jurisdiction over the District Court's denial of reconsideration which, in this case, proves sufficient.

## I. Factual Background and Procedural History

On February 21, 2006, Long filed an *in forma pauperis* complaint under 42 U.S.C. § 1983 against the Atlantic City Police Department, the New Jersey State Police, two police officers, and two forensic chemists. He alleged that the defendants conspired to obtain a capital murder conviction against him by knowingly presenting false evidence at his trial, and deliberately preventing him from obtaining DNA testing that would prove his innocence.[1] The complaint

---

[1] In his own words, Long claimed that "the Defendants violated [his] constitutional and civil rights … by committing perjury and/or fabricating evidence and engaging in conspiratorial acts to hide evidence to prevent DNA testing, causing … [him] to be falsely convicted of capital murder." (Amicus App. at 133; *see also id.* at 137 (alleging a

3

sought monetary damages to compensate him for the consequences of the alleged conspiracy.

On August 16, 2006, after screening the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A,[2] the District Court issued a memorandum concluding that Long's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), unless and until Long could demonstrate that his state court conviction was invalid. Accordingly, the District Court dismissed the complaint *sua sponte*, even though the defendants had not yet been served. The Court issued an accompanying order closing the case that same day. On August 21, 2006, the memorandum and the order were entered on the District Court's docket. Thus, under the rules then in effect,[3] Long had until September 4, 2006 to file a

---

conspiracy to "hide the evidence to prevent it from being DNA tested and to prevent … [Long] from being able to establish his innocence").) Citations to "Amicus App." are to the Appendix filed by court-appointed Amicus, Fine, Kaplan & Black, R.P.C. ("Fine Kaplan").

[2] Collectively, those provisions provide that district courts should screen civil complaints in which a prisoner seeks redress from a governmental entity or officer, and dismiss the case if the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.

[3] Currently, a "motion to alter or amend a judgment [under Rule 59(e)] must be filed no later than 28 days after the entry of the judgment," Fed. R. Civ. P. 59(e), and "all deadlines stated in days (no matter the length) are computed

4

motion for reconsideration under Rule 59(e). *See* Fed. R. Civ. P. 59(e) (stating the deadline by reference to the "entry of the judgment").

He did not do so. Instead, on September 25, 2006, Long filed[4] a motion for reconsideration along with a letter brief explaining that he had not received the District Court's filings until September 22, 2006 – after the 30-day period to file an appeal under Appellate Rule 4(a)(1) had lapsed.[5] The motion for reconsideration claimed that the delay was caused, in part, by Long's transfer from one state prison to another. Specifically, Long claimed that although he had informed the

in the same way," Fed. R. Civ. P. 6 (Advisory Committee's Notes on 2009 Amendments). However, at the time Long's case was before the District Court, a 10-day deadline applied, Fed. R. Civ. P. 59(e) (2006), and time periods involving less than 11 days were calculated by excluding intermediate Saturdays, Sundays, and legal holidays, Fed. R. Civ. P. 6(a) (2006).

[4] Long signed his motion on September 25, 2006, and it was entered on the District Court's docket on October 2, 2006. Heeding the Supreme Court's instruction in *Houston v. Lack*, 487 U.S. 266 (1988), we presume, for purposes of our discussion, that Long filed his motion on the date he executed it. *See id.* at 276 ("[T]he notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.").

[5] While we will make references to the Federal Rules of Civil Procedure simply as "Rules," we will use the shorthand "Appellate Rule" when referring to the Federal Rules of Appellate Procedure.

5

District Court of his transfer to a new prison, he received the District Court's memorandum and order only after they were sent to his old prison and then forwarded to him. He also attributed his delayed receipt of those documents to the fact that officials at his new prison "open Legal Mail outside of the inmate's presence." (Amicus App. at 149.)

On October 4, 2006, the District Court issued a memorandum treating Long's motion for reconsideration as timely because he had "executed his motion on September 25, 2006, within three days of receipt" (Amicus App. at 155), but rejecting Long's motion for reconsideration on the merits, based on *Heck*. The District Court's memorandum, as well as its accompanying order, were entered on the docket on October 6, 2006. On October 31, 2006, Long signed a notice of appeal that was therefore timely as measured from the denial of reconsideration, *see* Fed. R. App. P. 4(a)(1)(A) (providing that a notice of appeal must be filed within "30 days after entry of the judgment or order appealed from" in a case in which the United States or its agent is not a party), but untimely as measured from the August 16, 2006 order dismissing the case.

We consolidated Long's appeal with other cases presenting similar issues implicating Appellate Rule 4(a) for the purpose of determining whether, and to what extent, we have appellate jurisdiction to consider it.[6]

---

[6] Those other cases are *Baker v. United States*, Nos. 08-2288 and 08-2365, *Barner v. Williamson*, No. 08-1025, and *Cycle Chem, Inc. v. Jackson*, No. 09-1320. They are the subject of separate dispositions.

6

## II.    Discussion[7]

The parties agree that we have jurisdiction to review the District Court's order denying Long's motion for reconsideration.[8]    Long contends that we also have jurisdiction to review the underlying dismissal order because his motion for reconsideration should, under Appellate Rule 4(a)(4)(A), toll his time to file an appeal.  That Appellate Rule provides, in pertinent part, that certain "timely file[d]" post-judgment motions, including motions to reconsider under Rule 59(e), serve to postpone "the time to file an appeal … [until] the entry of the order disposing of the last … remaining motion."  Fed. R. App. P. 4(a)(4)(A).  Although Long acknowledges that his motion for reconsideration was late, he asks us to treat it as timely, due to the mail handling in prison that allegedly delayed his filing.

Our Amicus, Fine Kaplan, takes a contrary view regarding Long's attempt to appeal the underlying order of dismissal.  According to Amicus's view of the law, when

---

[7] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).  We have appellate jurisdiction, if at all, pursuant to 28 U.S.C. § 1291.

[8] Because none of the defendants named in Long's complaint were served before his complaint was dismissed, those parties were not present to take a position on the jurisdictional questions presented in this appeal.  To facilitate our inquiry, we appointed Fine Kaplan to file an amicus brief on behalf of the Court, and Dechert LLP to file a brief on behalf of Long.  The Court is grateful for the superb assistance provided by those firms.

7

Long did not receive a copy of the District Court's dismissal order until after the 30-day time limit for filing a notice of appeal had lapsed, his only recourse was to file a motion under Appellate Rule 4(a)(5) for an extension of time to appeal,[9] or a motion under Appellate Rule 4(a)(6) to reopen the time to file an appeal.[10] Because Long filed neither of those motions and instead filed a motion for reconsideration under Rule 59(e), Amicus argues that we lack jurisdiction to review the District Court's underlying dismissal order.

---

[9] Appellate Rule 4(a)(5) provides, in relevant part, that the district court "may extend the time to file a notice of appeal if" a party seeks an extension (1) no later than 30 days after the otherwise applicable appellate deadline; and (2) "shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A)(i)-(ii).

[10] Appellate Rule 4(a)(6) provides, in relevant part, that the district court "may reopen the time to file an appeal for a period of 14 days" if (1) the court determines the movant did not receive notice of the entry of the appealable order within 21 days of its entry; (2) the motion is filed in the earlier period of 180 days of the appealable order's entry or 14 days after the moving party receives notice; and (3) the court determines that no party would be prejudiced by reopening the time to appeal. Fed. R. App. P. 4(a)(6)(A)-(C).

A.    *Our Jurisdiction to Review the District Court's Initial Dismissal Order*

We therefore begin our analysis by evaluating whether we have jurisdiction to review the District Court's order dismissing Long's complaint.  That inquiry leads us to examine two distinct questions.

First, we address whether allegations of prison delay can excuse the untimeliness of a motion to reconsider under Rule 59(e) so as to permit us to exercise jurisdiction under Appellate Rule 4(a)(4)(A) to review the underlying dismissal. If an untimely Rule 59(e) motion can be considered "timely" as a result of prison delay, Appellate Rule 4(a)(4)(A) permits "the time to file an appeal [to] run[] … from the entry of the order disposing of … [that] motion."  Fed. R. App. P. 4(a)(4)(A).  Second, assuming Appellate Rule 4(a)(4)(A) does provide an avenue for us to reach the underlying dismissal order, we consider whether there is a temporal limitation on the operation of that rule that would prevent its application in circumstances where a Rule 59(e) motion is filed after the otherwise applicable time period for filing a notice of appeal, *see* Fed. R. App. P. 4(a)(1), has lapsed.

We address those questions in turn.

1.    *Whether Prison Delay Can Render an Untimely Rule 59(e) Motion Timely*

The idea that prison delay may serve to toll the time to appeal stems from our holding in *United States v. Grana*, 864 F.2d 312 (3d Cir. 1989), *abrogated on other grounds by Virgin Islands v. Martinez*, 620 F.3d 321 (3d Cir. 2010).

9

There, we held that delay by prison authorities in delivering mail to a prisoner should be excluded in calculating the time for filing a notice of appeal in a criminal case. *See id.* at 313. Although the prisoner in *Grana* filed a pro se appeal "fifteen days out of time" under Appellate Rule 4(b), Grana alleged that the prison had "negligently handled his incoming mail, and as a result he did not receive the district court's final order until May 5, 1988, after the expiration of the appeal period." *Id.* at 314. He consequently argued that, for purposes of jurisdiction, his appeal should be treated as having been filed on time. We agreed.

Pointing to the Supreme Court's adoption of the prison mailbox rule,[11] we observed that "prison delay beyond the litigant's control cannot fairly be used in computing time for appeal" and we "perceive[d] no difference between delay in transmitting the prisoner's papers to the court and transmitting the court's final judgment to him so that he may prepare his appeal." *Id.* at 316. We therefore held that, "in computing the timeliness of *pro se* prisoners' appeals, any prison delay in transmitting to the prisoner notice of the district court's final order or judgment shall be excluded from the computation of an appellant's time for taking an appeal." *Id.* We remanded the case to the district court to determine whether the appeal was timely under that standard because "the record d[id] not show the date the prison received notice of the district court's final order or conclusively establish the

---

[11] As mentioned *supra* note 4, the Supreme Court has held that a prisoner's notice of appeal is deemed filed upon delivery to the prison mail system. *See Houston*, 487 U.S. at 276. A variation of that rule is currently embodied in Appellate Rule 4(c).

10

date the prison transmitted the notice to [the] appellant." *Id.* We instructed that, on remand, the prison would have "the burden … of establishing the relevant dates" because the prison was best equipped to provide that information. *Id.*

In *United States v. Fiorelli*, 337 F.3d 282 (3d Cir. 2003), we extended the *Grana* rule to permit an untimely motion for reconsideration to be made timely so that it would, in turn, toll the time to appeal under Appellate Rule 4(a)(4)(A). Fiorelli filed a civil case under 28 U.S.C. § 2255,[12] mounting a collateral attack on his criminal conviction. *Id.* at 284. His claim for relief was denied by the district court on April 9, 2001. *Id.* at 285. On April 30, 2001, outside of the then-applicable 10-day period for filing a motion for reconsideration but within the 60-day period for filing a notice of appeal, *see* Fed. R. App. P. 4(a)(1)(B) (providing that a notice of appeal must be filed within "60

---

[12] After first observing that the time to appeal an order entered on a § 2255 motion is governed by Appellate Rule 4(a), we began our tolling discussion in *Fiorelli* by evaluating "the applicability of the Federal Rules of Civil Procedure to [Fiorelli's] § 2255 motion." *Fiorelli*, 337 F.3d at 285. We stated that we were considering "the requirement under Civil Rule 58 that judgments be set forth on a separate document and entered in the docket of the district clerk, and the time limitations accompanying motions for reconsideration under Civil Rules 59 and 60," *id.* at 286; we concluded that those civil rules applied in the § 2255 context, *see id.* at 286-87; and we proceeded to evaluate whether Fiorelli's untimely motion under Rule 59(e) could permit his appeal to be properly filed under Appellate Rule 4(a)(4)(A), *see id.* at 287-88.

11

days after entry of the judgment or order appealed from" in a case in which the United States or its agent is a party), he filed what the *Fiorelli* court ultimately construed as a Rule 59(e) motion for reconsideration, *Fiorelli*, 337 F.3d at 285, 288. The district court denied that motion on May 18, 2001, and Fiorelli filed a notice of appeal on July 17, 2001. *Id.*

Thus, as in this case, Fiorelli's notice of appeal was timely as measured from the denial of the untimely motion for reconsideration, but was otherwise untimely. Fiorelli alleged, however, that he received the district court's original order "during the normal mail distribution at the federal prison where he [was] confined," 13 days after the district court issued the order denying his § 2255 claim. *Id.* at 288 (internal quotation marks omitted). The question, therefore, was whether Fiorelli's delayed receipt of the original order, which delay was allegedly caused by prison officials, should result in his untimely motion for reconsideration being viewed as timely, thereby rendering his appeal of the original order denying his § 2255 claim timely under the provisions of Appellate Rule 4(a)(4)(A). *See id.* ("Fiorelli's appeal may be properly filed if his motion for reconsideration is deemed timely, thus invoking the tolling provision of Appellate Rule 4(a)(4)(A).").

We answered that there was "no reason why *Grana*'s exclusion of prison delays from the time limits of jurisdictionally sensitive filings should not apply to motions for reconsideration," inasmuch as such deadlines are "critical to appellate jurisdiction." *Id.* at 289. It followed that "a prison's actual delay or interference in the delivery of a final order of the district court is excluded from the calculation of the timeliness of motions for reconsideration … filed by pro

se inmates." *Id.* at 289-90. While we emphasized that the tolling rule requires a prisoner to allege that actual delay or interference in mail delivery was caused by the prison, we were satisfied that Fiorelli's "statement that he received the District Court's order during the normal mail distribution" could refer to such interference and remanded for the district court to determine whether the tolling rule could be properly invoked. *Id.* at 290 (internal quotation marks omitted). As we did in *Grana*, we instructed the district court to undertake factual findings as to "the relevant dates of the prison's receipt and delivery of the District Court's order" so that, on review, we could make a "determination of our jurisdiction." *Id.*

Notwithstanding *Fiorelli*'s extension of the *Grana* tolling principle to a case governed by the Federal Rules of Civil Procedure and Appellate Rule 4(a), we seemed to reject that approach in *Poole v. Family Court of New Castle County*, 368 F.3d 263 (3d Cir. 2004). In *Poole*, a pro se prisoner filed an untimely notice of appeal, "apparently because of delay in receiving notice of the entry of the order dismissing his claims." *Id.* at 264. Citing *Grana*, Poole argued that "his [otherwise untimely] notice of appeal should be regarded as having been filed on time because there was a delay in his receipt of notice from the district court clerk's office regarding the entry of the order of dismissal." *Id.* That delay was allegedly the result of "Poole's transfer from one correctional institution to another shortly before the order of dismissal was entered."[13] *Id.* at 264-65. Without mentioning

---

[13] More specifically, the delay in *Poole* occurred because the clerk's office mailed the notice to a prison where, by the time the letter arrived, Poole was no longer

13

*Fiorelli*, we concluded that the *Grana* tolling rule did not apply, distinguishing Poole's appeal because it – unlike the appeal in *Grana* – occurred in a civil case, *id.* at 265-66, and because "the delay was not primarily due to Poole's status as an inmate but to the simple fact that he was moved," *id.* at 266 n.4. Poole's proper remedy, we explained, would have been to file a motion to reopen in accordance with Appellate Rule 4(a)(6). *See id.* at 266-67.

While *Poole* is plainly in tension with *Fiorelli*, we view the holding in *Poole* as turning not on its distinction between criminal and civil cases but rather on the nature of the alleged delay. In *Fiorelli*, the delay in the prisoner's receipt of the order was allegedly the result of the prison's handling of the mail. It was, in other words a classic prison delay case, after the manner of *Grana*. In *Poole*, by contrast, the delay allegedly was caused by the clerk's office and did not stem from actions or omissions by prison officials. *Cf. Fiorelli*, 337 F.3d at 289 ("*Grana* makes clear that only

incarcerated. *Poole*, 368 F.3d at 265. Poole had sent two letters to the district court concerning his change in address. The first, received just before the order was mailed to him, stated that Poole would be "returning to P.A. 3-24-02 is my Max out date and then my detainer come up." *Id.* It did not contain any Pennsylvania address or request a change in address. The second letter, received just after the order was sent, contained Poole's new address but "did not state expressly that Poole's address had changed and did not request that the clerk change the address listed on the docket." *Id.* As a result, it did not alert the clerk's office that the order "sent a few days earlier had been mailed to a facility where Poole was no longer housed." *Id.*

14

delays *caused by the prison* warrant tolling of the filing deadlines, and '[t]o the extent that the delay represents slow mail, there is nothing that this Court can do to preserve an appellant's right to appellate review.'" (emphasis added) (quoting *Grana*, 864 F.2d at 316)).

We therefore read *Fiorelli* to articulate a still-controlling rule that applies when delay is allegedly caused by actions or omissions of prison officials in the delivery of mail to a prisoner litigating pro se.[14] We reaffirm that we can view a Rule 59(e) motion as timely in such situations, allowing us to exercise jurisdiction pursuant to Appellate Rule 4(a)(4)(A) over an appeal of the underlying case-dispositive order, if the delay in filing the Rule 59(e) motion is caused by "a prison's actual delay or interference in the delivery of a final order of the district court."[15] *Id.* at 289. Thus, when a pro se prisoner

---

[14] We note that in *Fiorelli* the pro se prisoner attempted to toll the deadline for filing a motion for reconsideration under Rule 59(e) so as to permit an appeal in accordance with Appellate Rule 4(a)(4)(A). In *Poole*, by contrast, the pro se prisoner attempted to toll the deadline for filing a notice of appeal under Appellate Rule 4(a)(1). Given recent Supreme Court precedent, *see Bowles v. Russell*, 551 U.S. 205 (2007), that distinction may be a significant one. However, as discussed *infra* in Part II.A.2, the question of whether prison delay tolling principles are applicable to deadlines that are jurisdictional in character, such as Appellate Rule 4(a)(1), is not implicated in this case because Long seeks only to have us deem his Rule 59(e) motion timely.

[15] That is not to say, of course, that a pro se prisoner who experiences mail delay does not have other avenues that

15

makes allegations in connection with a motion for reconsideration that could reasonably be construed as a non-frivolous assertion that the prison delayed delivering the court order that he is asking be reconsidered, the district court should engage in the fact-finding necessary to a jurisdictional analysis under Appellate Rule 4(a)(4)(A). *See id.* ("The timeliness of a motion under … Civil Rule 59 … is critical to appellate jurisdiction."). In some instances, such as when the prisoner's allegations are uncontested, the district court may of course choose to credit what the prisoner says. There ought, however, also be some effort to confirm that the order was sent to the prisoner's correct prison address and an explicit determination that the prisoner's allegations as to the date of receipt are accepted as being true.[16] We then, in turn,

can serve to preserve his or her appellate rights. Appellate Rules 4(a)(5) and 4(a)(6), *see supra* notes 9-10, both provide means to do so, and are undoubtedly a more direct route to securing access to an appellate courtroom. *Cf. Poole*, 368 F.3d at 266-67 (discussing requirements for relief under Appellate Rules 4(a)(5) and 4(a)(6)). Indeed, when confronted with his delayed receipt of the District Court's memorandum and order in this case, Long would have been far better served by filing one of those motions rather than the motion for reconsideration he instead filed, as our ability to review the District Court's initial order of dismissal turns on whether his allegations of prison delay can be credited.

[16] Because the timeliness of a motion for reconsideration implicates our power to hear an appeal under Appellate Rule 4(a)(4)(A), a bare statement that the prisoner's allegations are assumed to be true will not do. Some kind of fact-finding is essential. We note, moreover, that making assumptions about timeliness could be viewed as an extension

16

would accept any such fact-finding as long as it was not clearly erroneous. Even when the district court determines it needs further information to decide whether the prison actually delayed or interfered with a prisoner's receipt of an order, we are not suggesting that a hearing will be necessary; we are instead directing only that, in such a case, the prison has the burden of providing evidence of the date it received the district court's final order and the date on which it was transmitted to the appellant. *See Grana*, 864 F.2d at 316. As a practical matter, this should add no burden to prison record-keeping because prison officials have, at least since *Grana*, been on notice that they should maintain "clear and accurate mail logs." *Id.*

In the present case, Long certified[17] that his delayed receipt of the District Court's memorandum and order was a result of two things: first, that those documents were incorrectly mailed to his old prison, and second, that his new

---

of time to file a motion for reconsideration. That would be inappropriate, given the explicit instruction in Rule 6 that time extensions for certain motions, including motions pursuant to Rule 59(e), are forbidden. *See* Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)."). District courts should of course heed that direction and hew strictly to the stated time limits, unless there is prison delay that serves as a basis for treating an untimely motion as timely.

[17] Long supported his allegations with a certification that stated his view of the  facts and contained an averment that "a willfully false statement [would] subject [him] to punishment." (Amicus App. at 150.)

17

prison opened legal mail before delivering it to prisoners. Thus, although some portion of the delay was allegedly caused by the District Court's clerk's office and any such time lost would not count towards making Long's untimely motion for reconsideration timely, some of the delay was also allegedly a consequence of prison delay, as Long complains of his new prison's practice of opening legal mail before sending it to inmates. We cannot sort out these alleged sources of delay, however, because the District Court made no express finding as to whether the prison actually delayed or interfered with Long's receipt of its order, and the record before us does not indicate when the prison where Long currently resides received the District Court's memorandum and order or when it transmitted those documents to Long. We would therefore ordinarily remand to the District Court to find those facts.

### 2. *Whether There is a Temporal Limitation on* Fiorelli*'s Tolling Rule*

Our Amicus, however, indicates that remand would be fruitless here since there is a 30-day outer time limit (or 60-day, when the United States or its agent is a party) on *Fiorelli's* tolling rule because Appellate Rule 4(a)(1) imposes that jurisdictional time limit on the filing of a notice of appeal. Amicus's argument is based on the Supreme Court's decision in *Bowles v. Russell*, 551 U.S. 205 (2007). In that case, the Supreme Court held that timing requirements for filing notices of appeal, as set forth in 28 U.S.C. § 2107 and from which Appellate Rule 4(a)(1) is derived, are mandatory and jurisdictional, and, as such, a court has no power to create equitable exceptions to them. 551 U.S. at 214. As we discuss more fully in the companion case filed today, *Baker v. United*

18

*States*, Nos. 08-2288 and 08-2365, there is no doubt after *Bowles* that the rules listed in 28 U.S.C. § 2107, one of which is restated in Appellate Rule 4(a)(1), are jurisdictional.[18]

---

[18] Though the subject of discussion at oral argument, we need not consider whether Appellate Rule 4(a)(4)(A) is likewise jurisdictional, or instead, a claims-processing rule. Although we similarly did not resolve that issue in *Lizardo v. United States*, 619 F.3d 273 (3d Cir. 2010), that decision implies that Appellate Rule 4(a)(4)(A) is a claims-processing rule because it – much like Rule 59(e) (and unlike Appellate Rule 4(a)(1)) – does not appear in a statute and was promulgated under the Rules Enabling Act. *See Lizardo*, 619 F.3d at 277 ("Rule 59(e) is akin to Rule 4004 of the Federal Rules of Bankruptcy Procedure. Both rules were promulgated by the Supreme Court under the Rules Enabling Act."). We do note, however, that, a conclusion that Appellate Rule 4(a)(4)(A) is a claims-processing rule would not prevent us from dismissing, *sua sponte*, untimely appeals filed under Appellate Rule 4(a)(4)(A). *See United States v. Mitchell*, 518 F.3d 740, 750 (10th Cir. 2008) (recognizing that, where "a rule implicates judicial interests beyond those of the parties, it may be appropriate for a court to invoke the rule *sua sponte* in order to protect those interests," and holding that the court had the power to enforce claims-processing rules by way of a *sua sponte* dismissal). In fact, given the administrative and institutional interests in enforcing appellate deadlines notwithstanding the parties' actions before us, a persuasive argument can be made that *sua sponte* dismissal should be the rule rather than the exception. *See id.* at 754 (Lucero, J., dissenting) ("I would dismiss almost all untimely appeals, regardless of whether an appellee forfeits its objection by not properly raising it.").

Because of that, and because *Fiorelli* tolling can permit a litigant entitled to its application to file a notice of appeal from the original order after Appellate Rule 4(a)(1)'s jurisdictional deadline has lapsed, our Amicus has taken the position that *Fiorelli* cannot allow an untimely motion for reconsideration to be deemed timely for purposes of Appellate Rule 4(a)(4)(A) if that motion is filed after the expiration of the 30- or 60-day jurisdictional period for filing a notice of appeal under Appellate Rule 4(a)(1). Were we to hold otherwise, Amicus warns, we would be allowing, and perhaps encouraging, an end-run around Appellate Rule 4(a)(1)'s jurisdictional deadline.

But Amicus's argument is misplaced. Properly viewed, the *Fiorelli* tolling rule does not extend any of the deadlines set forth in 28 U.S.C. § 2107 and Appellate Rule 4(a)(1). Rather, it concerns the "timeliness" of a motion for reconsideration, which then determines, under Appellate Rule 4(a)(4)(A), the orders over which we can exercise jurisdiction. When facts are found that demonstrate prison delay, all that *Fiorelli* does is allow us to, by excluding the time lost due to prison delay, deem as timely what would otherwise be an untimely motion for reconsideration. After subtracting such time, the prisoner must still file his appeal within 30 (or 60) days of the district court's disposition of his motion. If he does so, he will be considered to have properly filed his appeal in accordance with Appellate Rule 4(a)(4)(A). *Fiorelli's* tolling rule is nothing more than an application of the principle from *Houston v. Lack*, 487 U.S. 266 (1988) that time lost due to prison delay "cannot fairly be used in computing time for appeal." *Grana*, 864 F.2d at 316.

20

It is quite possible, then, that, after fact-finding by the District Court, we could conclude that we do have jurisdiction to consider the District Court's underlying order that dismissed Long's complaint. Our usual practice would therefore be to remand for the District Court to find the facts that "are essential for a determination of our jurisdiction" over that order. *Fiorelli*, 337 F.3d at 290. That step is unnecessary in this case, however, since we agree with the parties that we have jurisdiction to consider Long's appeal to the extent he challenges the District Court's denial of his motion for reconsideration,[19] which proves sufficient in this case.

## B. *The District Court's Denial of Reconsideration*

We acknowledge that our review of the order denying reconsideration is subject to a more deferential and circumscribed standard of review than would apply if we also

---

[19] Earlier precedent considered any "sub[s]tantive action a court takes on an untimely motion … a nullity." *Sonnenblick-Goldman Corp. v. Nowalk*, 420 F.2d 858, 861 (3d Cir. 1970). More recent authority, however, establishes that we "can no longer treat Rule 59(e) as a jurisdictional rule, nor view … [an] untimely motion for reconsideration as a nullity." *Lizardo*, 619 F.3d at 277. It logically follows that a district court's action on such a motion can, likewise, not be deemed a nullity, and we therefore have jurisdiction to review a timely appealed order disposing of an untimely motion for reconsideration. However, because any such order is appealable in its own right, the filing fee waiver provided for in Appellate Rule 4(a)(4)(B)(iii) does not apply to a notice of appeal challenging the disposition of the untimely motion.

were to have jurisdiction to consider the underlying dismissal order, as we review only whether the District Court's denial of reconsideration constitutes an abuse of discretion.[20]  *See,*

---

[20] If we had jurisdiction to consider the underlying order, we would exercise plenary review to determine whether the District Court properly dismissed Long's complaint. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  Some cases intimate that our review of an order denying reconsideration is, likewise, plenary to the extent that "the denial of reconsideration is predicated on an issue of law." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999); *see N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1203 (3d Cir. 1995) ("Where a district court's denial of a motion to reconsider is based upon the interpretation of legal precepts, however, our review of the lower court's decision is plenary.").  That idea, however, stems from the understanding that "an appeal from a denial of a Motion for Reconsideration brings up the underlying judgment for review," *McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 552-53 (3d Cir. 1992) (citing *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348-49 (3d Cir. 1986)), which is only true to the extent that Appellate Rule 4(a)(4)(A) allows "the time to file an appeal [to] run[] for all parties from the entry of the order disposing of" a timely filed Rule 59 motion, Fed. R. App. P. 4(a)(4)(A)(v); *see Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77, 78 (3d Cir. 1982) ("A timely appeal from an order denying a Rule 59 motion to alter or amend brings up the underlying judgment for review." (citing Fed. R. App. P. 4(a)(4))).  Thus, when there is no timely filed post-judgment motion to trigger Appellate Rule 4(a)(4)(A)'s tolling provisions and when an appeal is untimely as measured from

---

22

*e.g.*, *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) ("[T]he appropriate standard of review [of an appeal from the district court's denial of a Rule 59 motion] is for an abuse of discretion."). Consequently, in the ordinary case, we would not assume that reviewing a denial of reconsideration would be functionally the same as reviewing the underlying order, even if the former covered all of the same issues as the latter.

However, though we are bound by an abuse of discretion standard in reviewing the denial of reconsideration, it would indeed be an abuse of discretion in this case if the District Court were wrong in saying that *Heck* required dismissal of Long's complaint. *See Planned Parenthood of Cent. N.J. v. Att'y Gen. of the State of N.J.*, 297 F.3d 253, 265 (3d Cir. 2002) ("[A] court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." (internal citation omitted)). Thus, even though we cannot conclude on this record whether we have jurisdiction to exercise plenary review to consider whether the District Court erred in dismissing Long's complaint, the legal question presented is essentially the same under either plenary or abuse-of-discretion review: whether the District Court correctly found Long's complaint to be barred by *Heck*.

In *Heck*, the Supreme Court held that a § 1983 suit should be dismissed when a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence … unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. Here, Long's complaint seeks the sort of

---

the underlying judgment, we cannot exercise plenary review over an order disposing of a motion for reconsideration.

23

relief that is plainly barred by *Heck* because he seeks § 1983 relief on the ground that the defendants conspired to obtain a capital murder conviction against him, but he has not demonstrated that his conviction has already been invalidated. (*See* Amicus App. at 133 (alleging that "the Defendants violated [Long's] constitutional and civil rights … by committing perjury and/or fabricating evidence and engaging in conspiratorial acts to hide evidence to prevent DNA testing, causing … [Long] to be falsely convicted of capital murder").) Although the Supreme Court has clarified that *Heck* does not bar a litigant from seeking access to DNA evidence through § 1983, *see Skinner v. Switzer*, 131 S. Ct. 1289, 1298 (2011), the conspiracy described in Long's complaint does not, even liberally construed, seek such relief.

Therefore, we hold that the District Court committed no legal error in denying Long's motion for reconsideration, and so did not abuse its discretion in declining to change its order dismissing Long's complaint. And because the same result would obtain were we to ultimately determine that we have jurisdiction to review the District Court's dismissal order, we need not remand for *Fiorelli* fact-finding.

## III.    Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

24