**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1466
_____

STEPHEN G. CONKLIN,

Appellant

v.

KRISTINE M. ANTHOU, individually, and in her official capacity as an officer of the Court, and as agent for, and/or as representative of JPMorgan Chase, and EMC Mortgage Corporation; MARY D. GRENEN, individually, and in her official capacity as an officer of the Court, and as agent for and/or representative of EMC Mortgage Corporation; LAWRENCE T. HIMES, JR., individually, and in his official capacity as an officer of the Court, and, as agent for, and/or as representative of Green & Birsic, P.C.; GRENEN & BIRSIC P.C., as counsel for JP Morgan Chase and EMC Mortgage Corporation; JP MORGAN CHASE, and/or; EMC MORTGAGE CORPORATION; STEPHEN P. LINEBAUGH, individually and in his official capacity as Judge for the Court of Common Pleas of York County; RICHARD K. RENN, individually and in his official capacity as President Judge for the Court of Common Pleas of York County; MARIA MUSTI COOK, individually and in her official capacity as Judge for the Court of Common Pleas of York County; J. ROBERT CHUK; YORK COUNTY SHERIFFS OFFICE; RICHARD P. KEUERLEBER, individually and in his official capacity as Sheriff of York County; JOHN DOE, individually and in his official capacity as Deputy Sheriff of York County; COUNTY OF YORK; NINETEENTH JUDICIAL DISTRICT OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1:10-cv-02501)
District Judge:  Honorable Robert D. Mariani

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 24, 2012

Before: AMBRO, CHAGARES and JORDAN, Circuit Judges

(Opinion filed: August 30, 2012)
_____

OPINION
_____

PER CURIAM

The pro se appellant, Stephen G. Conklin, appeals several District Court orders dismissing his claims against some defendants, entering summary judgment in favor of others, and denying his post-judgment motion for reconsideration. We will affirm.

I.

This suit is the latest in a series of actions addressing the ownership of, foreclosure upon, and sale of "Satori Farm," a parcel of land at 100 Spangler Road in Lewisberry, Pennsylvania. Commencing shortly after the 1997 execution of a mortgage on the property, the various proceedings—which have spanned state, federal bankruptcy,[1] and federal district courts—have addressed the validity of mortgage assignments, the legitimacy of foreclosure attempts, and so on, reflecting Conklin's attempts to retain the property amid his assertions that the foreclosure and ejectment proceedings were the product of years of fraud and were thus unlawful; and, moreover, his belief that the rulings against him were obtained in violation of due process and his constitutional right

_____
[1] New bankruptcy proceedings were initiated as recently as January 2012. See M.D. Pa. Bankr. No. 1-12-00331. We take judicial notice of the series of federal cases commenced by Conklin. See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009).

2

to be heard.

Conklin filed this lengthy federal complaint in December of 2010. In a previous appeal, we summarized the pleading as:

> "a 91-page complaint against JP Morgan Chase and EMC Mortgage Corporation; the law firm and lawyers that represent them; three judges of the York County Court of Common Pleas and the court administrator; the Nineteenth Judicial District of Pennsylvania; York County; the York County Sheriff; and a John Doe Deputy Sheriff [later identified as Sheriff's Deputy Root]. [Conklin] claimed that the defendants violated his civil rights, engaged in a conspiracy to deprive him of his property and his right to be heard in court, and violated several state laws in connection with allegedly fraudulent mortgage documents, an 'illegal' foreclosure on and sale of his home after years of state court litigation, and ongoing ejectment proceedings filed against him in state court."

Conklin v. Anthou, 458 F. App'x 94, 96 (3d Cir. 2012) (resolving interlocutory appeal of the denial of a preliminary injunction request). Most of the defendants moved separately to dismiss the complaint on grounds ranging from a lack of subject-matter jurisdiction under the Rooker-Feldman doctrine[2] to Conklin's failure to state a claim upon which relief could be granted; the York County Sheriff's Office, Sheriff Keuerleber, the County of York, and Deputy Sheriff Root moved for summary judgment, invoking qualified immunity, Rooker-Feldman, the statute of limitations, and pleading deficiencies. In each instance, the District Court granted the requested relief while declining to exercise its supplemental jurisdiction over Conklin's state-law claims. See ECF Nos. 121 (dismissing claims against the judicial and court defendants), 122 (dismissing claims

---

[2] D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

3

against Himes), 123 (dismissing claims against the legal defendants), 124 (dismissing claims against EMC and its affiliates), 126 (granting York County defendants' motion for summary judgment). After Conklin's timely motion for reconsideration was denied, he sought our review of the District Court's decisions.[3]

## II.

We exercise appellate jurisdiction under 28 U.S.C. § 1291, reviewing de novo the District Court's orders dismissing the complaint and granting summary judgment. Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011); Whiteford v. Reed, 155 F.3d 671, 672 (3d Cir. 1998); see also Gallas v. Sup. Ct. of Pa., 211 F.3d 760, 768 (3d Cir. 2000) (conducting plenary review of immunity defense). The District Court's decision not to exercise supplemental jurisdiction is reviewed for abuse of discretion, see Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009); but when only pendent state claims remain, the scale tips heavily in favor of their dismissal "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification" for continuing to exercise jurisdiction. Bright v. Westmoreland Cnty., 443 F.3d 276, 286 (3d Cir. 2006) (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)). A denial of a motion for reconsideration is also reviewed for abuse of discretion. Long v. Atl. City Police Dep't, 670 F.3d 436, 446 (3d Cir. 2012).

---

[3] Conklin's "Motion to File Reply Brief Nunc Pro Tunc" is granted. The Clerk is directed to file his reply brief.

Summary judgment is properly granted only when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a),[4] and in evaluating the record we must believe the non-movant's evidence and draw all justifiable inferences in his favor; if a jury could not reasonably find for the non-movant, summary judgment is warranted. Barefoot, 632 F.3d at 826. To withstand a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. (internal citations, quotations omitted). We may affirm the district court on any basis that finds support in the record. Tunstall v. Office of Judicial Support of Ct. Com. Pl., 820 F.2d 631, 633 (3d Cir. 1987) (citations omitted).

III.

a) Rooker-Feldman

Because it implicates subject-matter jurisdiction, see Gary v. Braddock Cemetery, 517 F.3d 195, 200 & n.4 (3d Cir. 2008), we begin with the Rooker-Feldman doctrine,

---

[4] The District Court utilized the old Fed. R. Civ. P. 56(c) in rendering its decision, but the differences between the old and new summary-judgment standards are cosmetic only. See Fed. R. Civ. P. 56 advisory committee's 2010 note.

Conklin argues that granting summary judgment in favor of the defendants violates his right to trial by jury under the Seventh Amendment, but he is mistaken. "As the Supreme Court held, over one hundred years ago, a summary judgment proceeding does not deprive the losing party of its Seventh Amendment right to a jury trial." Santa Barbara Capital Mgmt. v. Neilson (In re Slatkin), 525 F.3d 805, 811 (9th Cir. 2008) (citing Fid. & Deposit Co. of Md. v. United States, 187 U.S. 315, 319–21 (1902)); see also Ortman v. Thomas, 99 F.3d 807, 811 (6th Cir. 1996) (describing the argument as "patently meritless"); Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072, 1077 n.3 (9th Cir. 1986).

5

which bars from federal consideration "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Prior to Exxon, we applied the doctrine by examining, in part, whether the asserted federal claim was "inextricably intertwined" with the relevant state adjudication; after Exxon clarified the reduced reach of Rooker-Feldman, however, we have stressed that "caution is now appropriate in relying on our pre-Exxon ['inextricably intertwined'] formulation of the Rooker-Feldman doctrine." Braddock, 517 at 200 n. 5. Now understood to be of "narrow" scope, Lance v. Dennis, 546 U.S. 459, 464 (2006) (per curiam), Rooker-Feldman is properly invoked when the following four factors are satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (quotations omitted, alterations in original).

Unfortunately, the application of Rooker-Feldman in this case is complicated by Conklin's byzantine history of state-court filings; the complaint reflects a roughly chronological approach, but does not distinguish between what appear to be several parallel proceedings. Furthermore, while the relevant Pennsylvania Superior Court

opinion affirming the trial court's finding of default is dated June 17, 2009,[5] the exhibits Conklin attached reflect additional trial-court proceedings during and after that appeal.

We do know, however, that an adverse state-court mortgage judgment was entered against Conklin, and he does appear to have assailed this outcome both in District Court and now on appeal. See, e.g., Appellant's Br. 17–19. Thus, to the extent that Conklin is attempting to solicit direct federal review of the Pennsylvania courts' decisions, he is directly complaining of injuries caused by the state-court judgments and his efforts are therefore barred by Rooker-Feldman. But he is not prevented from otherwise attacking the parties to the foreclosure proceedings or alleging that the methods and evidence employed were the product of fraud or conspiracy, regardless of whether his success on those claims might call the veracity of the state-court judgments into question.[6]

---

[5] This opinion by the Superior Court and other related documents are buried in Conklin's massive "Motion for Emergency Temporary Restraining Order and for Preliminary Relief," ECF No. 11. They do not appear elsewhere in the record, and no party filed a Record on Appeal or appendix presenting the various exhibits attached, in piecemeal fashion, to the District Court's docket.

[6] To the extent that Conklin relies on Hovey v. Elliott, 167 U.S. 409 (1897), he fails to realize that Hovey, a pre-Rooker-Feldman case, cannot be used to avoid the rule that Rooker-Feldman established. He cites Hovey for the principle that "[a] sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal." Id. at 415. If Conklin intended to imply that the prior proceedings did not afford him due process, constitutional due process requires an *opportunity* to be heard in a proceeding appropriate to the nature of the case, which does not guarantee Conklin a hearing of the form he might otherwise desire. Boddie v. Connecticut, 401 U.S. 371, 377–78 (1971) (distinguishing the scope of Hovey by emphasizing that due process is not a boundless doctrine). And if he intended it to bolster his claim that the state judgment is or was void, such a direct attack is facially barred by Rooker-Feldman.

Accordingly, we will address Conklin's remaining claims.

b) Immunity

Conklin challenged various actions taken by judges and court/law-enforcement personnel both in the courtroom and in the service of effectuating state judgments. The District Court determined that the judges sued by Conklin were protected by both absolute judicial immunity and Eleventh Amendment immunity, and that injunctive relief was forestalled by the 1996 amendments to 42 U.S.C. § 1983; that Court Administrator J. Robert Chuk was protected by quasi-judicial immunity and Eleventh Amendment immunity[7]; that the 19th Judicial District of Pennsylvania and the York County Court of Common Pleas were protected by Eleventh Amendment immunity and were, furthermore, not "persons" for the purposes of 42 U.S.C. § 1983; that Sheriff's Deputy Root was protected by either quasi-judicial immunity or qualified immunity; and that Sheriff Keuerleber was entitled to quasi-judicial immunity.

We are substantially in agreement with the District Court. Beginning broadly, claims against the defendants in their official capacities, which are in essence claims against the Commonwealth of Pennsylvania, are barred by Eleventh Amendment immunity. Contrary to Conklin's insistence that Pennsylvania's immunity has somehow been abrogated by the Spending Clause, it is well established that Pennsylvania has not

8

waived this immunity from suit in federal court and that Congress, in enacting 42 U.S.C. §§ 1983 and 1985, did not abrogate this immunity through its enforcement power pursuant to § 5 of the Fourteenth Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Wheeling & Lake Erie Ry. v. PUC, 141 F.3d 88, 91 (3d Cir. 1998); see also 42 Pa. Cons. Stat. Ann. § 8521(b). The Judicial District and the Court of Common Pleas are also protected by the Eleventh Amendment. See Benn v. First Judicial Dist., 426 F.3d 233, 238–41(3d Cir. 2005).

With regard to the defendant judges, judicial immunity extends to judicial officers, even if their actions were "in error, w[ere] done maliciously, or w[ere] in excess of [their] authority," unless the officers acted in clear absence of all jurisdiction. Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam) (citations, quotations omitted). The complained-of acts were clearly performed by these defendants in their roles as judges, and the alleged procedural errors identified by Conklin do not abrogate judicial immunity. See Stump v. Sparkman, 435 U.S. 349, 359, 362 (1978). Nor is judicial immunity lost as a result of improper favoritism or ex parte communications. Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir. 1996). While Conklin now argues that the state courts lacked jurisdiction over any of the proceedings before them, his claims are conclusory, failing to show the *clear* absence of *all* jurisdiction. See Sadoski v. Mosley, 435 F.3d 1076, 1079 (9th Cir. 2006) (distinguishing between actions in excess of

---

[7] These defendants filed a motion with this Court requesting to be excused from filing an appellate brief. The motion is granted.

jurisdiction and actions in clear absence of jurisdiction); see also Capogrosso, 588 F.3d at 184 (discussing pleading requirements in "judicial conspiracy" claims). Finally, Conklin cannot sustain his request for injunctive relief, because such claims are barred by the 1996 amendments to 42 U.S.C. § 1983. Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006).

Our finding of immunity also extends to Court Administrator Chuk and Sheriff Keuerleber. Chuk is attacked solely for actions taken in his role as Court Administrator. Therefore, he is entitled to the protection of quasi-judicial immunity. See Gallas, 211 F.3d at 772–73; Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992). Keuerleber, meanwhile, is attacked exclusively for his role in carrying out the sale of Satori Farm; because the sale was at the direction of a "*facially* valid court order," he is entitled to quasi-judicial immunity from suit as well. Roland v. Phillips, 19 F.3d 552, 556 (11th Cir. 1994) (emphasis added).

Summary judgment was granted in favor of defendant Root, who was accused of attempting to deny Conklin's "right to redress his grievances in open Court." Compl. ¶ 30. Specifically, during two February 2009 hearings, Root was alleged to have "firmly placed his hand on [Conklin's] collarbone [and] admonished [him] to remain silent." Compl. ¶ 310. There is some ambiguity in the record over whether Root acted in accordance with the presiding judge's explicit instructions or an independent desire to maintain courtroom decorum; Conklin's later submissions seek to emphasize that Root

was proceeding of his own volition.[8]  See, e.g., Conklin Decl. ¶¶ 4, 8;  Paoletta Decl. ¶ 5, ECF No. 89-1.  We note, first, that Conklin has not shown that he lost a meritorious claim due to these incidents.  Christopher v. Harbury, 536 U.S. 403, 415 (2002).  We are otherwise unable to discern a clearly established constitutional right that Root's conduct violated.  Contrary to Conklin's assertion, behavior in a courtroom setting is hardly "unfettered."  Cf. United States v. Moncier, 571 F.3d 593, 599 (6th Cir. 2009) (emphasizing that a judge, not an attorney, is in control of proceedings); United States v. Grace, 526 F.3d 499, 509 (9th Cir. 2008) (en banc) (noting that "judges exercise substantial discretion over what happens inside the courtroom") (citations omitted).  Thus, Root was entitled to be shielded by qualified immunity, at the very least.  See Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012).

Finally, in an attempt to bypass these claims of immunity, Conklin argues that several of the defendants were not legal occupants of their offices, having failed to take a prerequisite oath; presumably, while remaining susceptible to suit under § 1983, the defendants would not be able to cloak themselves in immunity.  Pennsylvania does require, by its constitution and by statute, all public officers to take an oath of office.  See Glancey v. Commonw. State Emp.'s Ret. Bd., 610 A.2d 15, 27–28 (Pa. 1992) (Nix, J., dissenting in part).  Even assuming that the defendants had not, in fact, taken their oaths of office (and the complaint is vague on this point; it appears that the defendants simply

---

[8] Conklin's later submissions also complain of incidents taking place after the filing of this suit, and which are therefore not properly before us.

refused to do so to Conklin's satisfaction), Conklin points to no case law that would support the conclusion that this omission abrogated claims to immunity. Cf. Thatcher Enter. v. Cache Cnty. Corp., 902 F.2d 1472, 1478 (10th Cir. 1990) (statutory immunity not diminished by absence of a formal, written oath of office).

c) Sheriff's Office and County of York

Conklin attempted to sue the York County Sheriff's office, as well as the County itself. He claimed that the actions of defendant Root, discussed above, were "symptomatic of what the real issue is—a policy, custom, and practice in the County of York, and York County Sheriff's Office of oppressive mistreatment of classes of litigants before the courts of York County." Pl.'s Br. in Opposition 7, ECF No. 88. A municipality cannot be constitutionally liable under respondeat superior; a § 1983 suit may lie only when the municipality itself, via an execution of policy or custom, inflicts the injury. City of Canton v. Harris, 489 U.S. 378, 385 (1989). We agree with the District Court that Conklin has failed to provide any evidence that the County, the Sheriff, or his office engaged in a pattern of behavior, or had in place a policy directing such behavior, that caused him constitutional harm.

d) Legal Defendants

Conklin also named as defendants Laurence T. Himes, Jr., former local counsel for EMC; Kristine M. Anthou and Mary D. Grenen, attorneys at Grenen & Birsic, P.C.; and

Grenen & Birsic, P.C. itself. But "[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999); see also Polk Cnty. v. Dodson, 454 U.S. 312, 318 (1981). Nor can conspiracies generally exist within the attorney-client relationship. Heffernan v. Hunter, 189 F.3d 405, 413 (3d Cir. 1999). Furthermore, we conclude that Conklin insufficiently pleaded racial or class-based discriminatory animus sufficient to state a claim under 42 U.S.C. § 1985(3), and has failed to elevate his allegations of conspiracy to a level that is plausible, rather than merely possible. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

e) EMC and J.P. Morgan Chase

Lastly, Conklin lodged claims against EMC and J.P. Morgan Chase. However, his § 1983 and § 1985 claims fail for the same reasons identified above; chiefly, those entities are not state actors and were not acting under color of state law, and Conklin has not pleaded the prerequisite discriminatory animus. That a state official was involved in the foreclosure process is irrelevant to this determination. See Northrip v. Fed. Nat'l Mortg. Ass'n, 527 F.2d 23, 28–29 (6th Cir. 1975).

f) Waiver

Conklin also charged several of the defendants with having committed civil RICO violations. As he appears to have abandoned this claim on appeal, we need not address it. Laborers' Int'l Union of N.A. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994)

13

("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court." (citation and internal quotation marks omitted)).

## IV.

Having conducted a full and thorough review of the record, we are satisfied that the District Court correctly ruled in favor of the defendants, and find that it did not abuse its discretion by declining to extend its jurisdiction to the state-law claims in the absence of any remaining federal causes of action and by denying Conklin's motion for reconsideration. See Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011) (observing that reconsideration motions can be used to "correct manifest errors of law or fact or to present newly discovered evidence"). Accordingly, we will affirm the judgment of the District Court.