**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3144
_____

PAULETTE TITUS-MORRIS,
                                        Appellant

v.

BANC OF AMERICA CARD SERVICING CORP.*

*Caption amended by Clerk's Order dated August 22, 2012
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-09-cv-00965)
District Judge:  Honorable Gregory M. Sleet

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 25, 2013
Before:  SLOVITER, GREENAWAY, JR., and BARRY, Circuit Judges

(Opinion filed: January 31, 2013)
_____

OPINION
_____

PER CURIAM

        In 2009, Paulette Titus-Morris filed a pro se complaint in the United States District

Court for the District of Delaware against her former employer, Banc of America Card

Servicing Corp. ("the Bank"), alleging that her termination was the result of employment

discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.

The Bank moved for summary judgment, asserting that Titus-Morris's termination was

the lawful result of her substandard job performance. On March 30, 2012, the District

Court granted the Bank's motion. On July 27, 2012, Titus-Morris filed this appeal.

We have jurisdiction under 28 U.S.C. § 1291.[1] We exercise plenary review over

the District Court's decision granting summary judgment, using the same standard

applied by the District Court. See Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d

Cir. 2007). Summary judgment is appropriate when the movant demonstrates "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). For the following reasons, we will affirm.

I.

---

[1] The Bank argues that we lack appellate jurisdiction because Titus-Morris's notice of appeal was untimely filed. Ordinarily, the time for filing a notice of appeal in a case like this is 30 days. See Fed. R. App. P. 4(a)(1)(A). That time limit is jurisdictional. Bowles v. Russell, 551 U.S. 205, 210 (2007); Baker v. United States, 670 F.3d 448, 456 (3d Cir. 2012). Here, however, the District Court's entry of judgment violated the "separate document rule" set forth in Fed. R. Civ. P. 58(a), which requires that "[e]very judgment and amended judgment must be set out in a separate document." In order for a judgment to be considered set out in a separate document, it "must be separately titled and captioned, not paginated consecutively to the opinion or memorandum, not stapled or otherwise attached to the opinion, and must be docketed separately." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 224 (3d Cir. 2007). In this case, the District Court's judgment was not docketed separately and was contained within an accompanying memorandum, even appearing before the memorandum's final page. Because the District violated the separate document rule, the 30-day time limit to file a notice of appeal began to run 150 days from the March 30, 2012, entry of judgment. See Fed. R. Civ. P. 58(c). Therefore, Titus-Morris's July 27, 2012 notice of appeal was timely filed and we have jurisdiction.

2

From 2003 until her termination in 2007, Titus-Morris worked for the Bank as a fraud analyst.[2] Her job was to review potentially fraudulent credit card applications and render decisions approving or denying them. The Bank evaluated her performance using standardized metrics based on (1) the number of approval or denial decisions she made per hour ("productivity level"); and (2) the quality of those decisions ("quality level"). Fraud analysts were expected to maintain a productivity level of at least 90 percent of the standard rate and a quality level of at least 96 percent of the standard rate. In November 2006, Titus-Morris's productivity level did not meet the Bank's requirements. In December 2006, her quality level did not meet the Bank's requirements. Titus-Morris's manager thereafter informed her that she would be given a final warning if she underperformed for a third consecutive month. In January 2007, neither Titus-Morris's productivity level nor her quality level met the Bank's requirements.

On February 2, 2007, Titus-Morris requested a meeting with Steve Ryder, the Bank's Operational Director for Fraud Application Prevention. During the meeting, Titus-Morris expressed complaints about several of her former managers, alleging that she had been subjected to various instances of religious, sexual, and racial discrimination during the course of her employment. Ryder informed Titus-Morris that he would look into her allegations. He also told her that the Bank was in the process of determining what course of action to pursue in light of her substandard job performance for three

---

[2] Titus-Morris was originally hired by MBNA Corporation and subsequently became an employee of the Bank following a merger of the two corporations.

consecutive months. On February 5, 2007, Ryder followed up with Titus-Morris's former managers and concluded that her complaints were meritless. On February 8, 2007, he met with Titus-Morris to administer a final warning for failure to meet performance expectations. He also informed Titus-Morris that he had met with her managers and concluded that the complaints she made on February 2 were baseless. Shortly after the February 8 meeting with Ryder, Titus-Morris sent an email to the Bank's CEO and Card Services Executive in which she repeated substantially the same complaints about her managers that she had presented to Ryder. Mark Morris, a human resources official at the Bank, investigated Titus-Morris's complaints and, on February 21, 2007, informed her that her allegations were unsubstantiated and that the performance warnings that had recently been issued against her were justified and would stand.

Titus-Morris's productivity level for February 2007 fell far below the Bank's requirements. On March 2, 2007, Ryder again met with Titus-Morris to discuss her performance. Thereafter, for the first two weeks of March, Titus-Morris's productivity level remained far below the Bank's requirements. On March 16, 2007, Ryder informed Titus-Morris that she was terminated due to continued substandard job performance. Following her termination, Titus-Morris filed with the Delaware Department of Labor a Charge of Discrimination, which was later transferred to the Equal Employment Opportunity Commission ("EEOC"). The EEOC was unable to determine that the Bank had violated Title VII and issued a right-to-sue letter. Titus-Morris thereafter filed in the District Court a pro se civil rights complaint under Title VII.

II.

We analyze Titus-Morris's discrimination and retaliation claims under Title VII according to the familiar burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 385-86 (3d Cir. 1999). Under the McDonnell Douglas framework, Titus-Morris bore the initial burden of establishing a prima facie case of a Title VII violation. See McDonnell Douglas, 411 U.S. at 802. If she succeeded, the burden then would shift to the Bank to "articulate some legitimate, nondiscriminatory reason" for her termination. See id. Titus-Morris would then have an opportunity to prove by a preponderance of the evidence that the legitimate reason for her termination offered by the Bank was a pretext. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).

We agree with the District Court that Titus-Morris has not established a prima facie case of Title VII discrimination arising from her termination. To establish such a prima facie case, she needed to show that (1) she belongs to a protected class; (2) she was qualified for the position she sought to retain; (3) she was subjected to an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference that the adverse action was taken because of her membership in the protected class. See Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). The Bank concedes that Titus-Morris belongs to a protected class, and that her termination constituted an adverse employment action. We also agree with the District Court that a reasonable jury could conclude that she was qualified for the position she sought to retain, considering her

5

ability to periodically meet the Bank's performance expectations in the years prior to her termination. However, we conclude that no reasonable factfinder could conclude that Titus-Morris's termination occurred under circumstances giving rise to an inference of discrimination.

Titus-Morris supports her argument that her termination constituted discrimination by citing various discrete instances of alleged religious, sexual, and racial discrimination during the course of her employment. These occurrences are not individually actionable because, as the District Court concluded, they are barred by the applicable 300-day statute of limitations. See 42 U.S.C § 2000e-5(e)(1); Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000). Moreover, because each of the alleged discriminatory acts occurred outside of the limitations period, they cannot in the aggregate form the basis for a hostile work environment claim. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). However, Titus-Morris may cite those discrete occurrences as background evidence in support of her timely claim that her eventual termination constituted unlawful discrimination under Title VII. See Morgan, 536 U.S. at 113 (prior acts that are not actionable because they are time-barred may still be cited as background evidence in support of a timely claim). Nonetheless, we find the occurrences she cites insufficient to give rise to an inference that her termination was discriminatory.

Titus-Morris first asserted that she was subjected to religious discrimination in 2004 when one of her managers criticized her leadership qualities as "poor" because her religious beliefs prevented her from attending office outings where alcohol was served.

6

This performance review is insufficient to establish an inference of religious discrimination. Not only did it occur years before Titus-Morris's termination, but it merely stated that she should be a team player in "all job aspects" and actually provided her with a leadership assessment of "Good." Titus-Morris next asserted that she was subjected to sexual discrimination in 2004 when her male manager would "often yell at/correct [her]" in front of her colleagues and would "do the opposite for [her] peers." This assertion, for which Titus-Morris provided no further elaboration or supporting documentation, is insufficient to establish an inference of sex discrimination because Titus-Morris did not allege that her manager treated her male colleagues differently in this respect, stating only that she was generally singled out from her "peers." Finally, Titus-Morris asserted that she was subjected to racial discrimination based on comments made by different white managers in 2006 and early 2007. For example, she contended that one of her managers described her as "cheeky" and "aggressive," even after she informed him that she considered those terms to be veiled racial slurs. She also alleged that, on one occasion, a different manager "carried on" about her head tie and asked why "only Black women wear head ties outside of the house." We conclude that these and other stray remarks cited in the complaint would not permit a reasonable factfinder to conclude that her eventual termination constituted racial discrimination. See Ezold v. Wolf, Block, Schorr and Solis-Cohn, 983 F.2d 509, 545 (3d Cir. 1992).

We also conclude that Titus-Morris has not established a prima facie case of retaliation. To establish a prima facie claim of unlawful retaliation under Title VII, Titus-

7

Morris must show that (1) she engaged in activity protected by Title VII; (2) the Bank took an adverse action against her; and (3) there was a causal connection between the protected activity and the adverse action taken by the Bank. See Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). Titus-Morris's retaliation claim is based on her February 2, 2007, meeting with Ryder during which she made complaints about her former managers and her subsequent email to Bank executives which relayed the same complaints. The Bank does not dispute that Titus-Morris's complaints about her managers to their superiors constitutes activity protected by Title VII, or that her termination by the Bank constituted an adverse action. However, we conclude that Titus-Morris has not established a causal connection between the complaints and her firing.

The sole fact Titus-Morris points to in support of a causal connection is the timing of her termination, which occurred less than two months after she made the complaints about her managers. However, the "mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997). In order to establish a causal connection, the timing of her firing would need to be "unusually suggestive" of a retaliatory motive. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). Here, Titus-Morris complained about her managers only after she had failed to meet performance expectations for the previous three months and been informed that her continued employment was in jeopardy. See Shaner v. Synthes, 204 F.3d 494, 504-05 (3d Cir. 2000).

8

Finally, even if Titus-Morris were able to establish a prima facie case of Title VII discrimination or retaliation arising from her termination by the Bank, she pointed to no evidence that would allow a reasonable fact finder to conclude that the Bank's stated reason for terminating her was a pretext. See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (in order to demonstrate that an employer's stated reason for termination was a pretext, a plaintiff must point "to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action"). Here, Titus-Morris does not dispute that she failed to meet the Bank's performance expectations for three consecutive months. She pointed to no evidence suggesting, nor do we find any reason to conclude, that the Bank terminated her employment for any other reason.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.